1  DAVID R. WELCH [SBN 251693]
   **D | R WELCH ATTORNEYS AT LAW, APC.**
2  500 South Grand Avenue, 18th Floor
3  Los Angeles, California 90071
   Telephone: (213) 596-9008
4  Facsimile: (213) 536-4589

5  NORRIS & GALANTER LLP
   Donald G. Norris SBN. 9000
6  500 South Grand Avenue, 18th Floor
   Los Angeles, CA 90071
7  Telephone:   (213) 596-9008
   Facsimile:   (213) 536-4589
8
9  *Attorneys for Plaintiffs MKAY, INC.,*
   *CBD, INC., GAGE COLLECTIVE, INC.,*
10 *CRUZ VERDE, INC., FLOWER REFINERY, INC.,*
   *TRINK HEALTH, INC.,*
11 *GO GREEN MEDICAL HOLDINGS, INC.,*
   *and FIVE POINT VENTURES, INC.*
12

13              **UNITED STATES DISTRICT COURT**
14              **CENTRAL DISTRICT OF CALIFORNIA**
15

| | |
|---|---|
| 16 MKAY, INC., a California Nonprofit Mutual Benefit Corporation; GAGE COLLECTIVE, INC., a California Nonprofit Mutual Benefit Corporation; FLOWER REFINERY, INC., a California Nonprofit Mutual Benefit Corporation; GO GREEN MEDICAL HOLDINGS, INC., a California Nonprofit Mutual Benefit Corporation; CRUZ VERDE, INC., a California Nonprofit Mutual Benefit Corporation; CBD, INC., a California Nonprofit Mutual Benefit Corporation; TRINK HEALTH, INC., a California Nonprofit Mutual Benefit Corporation; and FIVE POINT VENTURES, INC., a California Nonprofit Mutual Benefit Corporation, | Case No. 2:17-CV-01467-SJO-AFM **PLAINTIFFS' FIRST AMENDED COMPLAINT FOR:** **(1) CIVIL CONSPIRACY** **(2) FRAUD** **(3) 42 U.S.C. §1983** **(4) VIOLATION OF CALIFORNIA CONSTITUTION, ART. I, § 2** Judge:   Hon. S. James Otero |
|                  Plaintiffs, |  |
|           v. |  |

1 CITY OF HUNTINGTON PARK, a
2 Municipality; GRACIELA ORTIZ, an
individual; MARILYN SANABRIA, an
3 individual; KARIAN MACIAS, an
individual; NATURAL
4 COMPASSIONATE CENTER, a
California Nonprofit Mutual Benefit
5 Corporation; MICHAEL A.
SCHENONE, an individual; UNITED
6 HEALTH & CARE CENTER, a
California Nonprofit Mutual Benefit
7 Corporation; VIBHA C. PATEL, an
individual; MIKE PATEL, an individual;
8 GOODNESS 4 LIFE, a California
Nonprofit Mutual Benefit Corporation;
9 ROBERT J. HODGE, an individual;
10 C4EVERSYSTEMS, LLC, a Delaware
Limited Liability Company; MJIC, INC.,
11 a California Corporation; and DOES 1
12 through 100, inclusive,

13               Defendants.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMES NOW, the Plaintiffs, MKAY, INC. ("MKAY") ; GAGE COLLECTIVE, INC. ("GAGE"); FLOWER REFINERY, INC. ("FRI"); GO GREEN MEDICAL HOLDINGS, INC. ("GGMH"); CRUZ VERDE, INC. ("CRUZ"); CBD, INC. ("CBD"); TRINK HEALTH, INC. ("TRINK"), and FIVE POINT VENTURES, INC. ("FPV"), and hereby complains and alleges as follows:

1.     At all times relevant to the facts alleged herein, Plaintiff MKAY, INC. was and is a California nonprofit mutual benefit corporation duly organized and operating with its principal place of business in Los Angeles County, California.

2.     At all times relevant to the facts alleged herein, Plaintiff GAGE COLLECTIVE, INC. was and is a California nonprofit mutual benefit corporation duly organized and operating with its principal place of business in Los Angeles County, California.

3.     At all times relevant to the facts alleged herein, Plaintiff FLOWER REFINERY, INC. was and is a California nonprofit mutual benefit corporation duly organized and operating with its principal place of business in San Bernardino County, California.

4.     At all times relevant to the facts alleged herein, Plaintiff GO GREEN MEDICAL HOLDINGS, INC. was and is a California nonprofit mutual benefit corporation duly organized and operating with its principal place of business in Los Angeles County, California.

5.     At all times relevant to the facts alleged herein, Plaintiff CRUZ VERDE, INC. was and is a California nonprofit mutual benefit corporation duly organized and operating with its principal place of business in Los Angeles County, California.

6.     At all times relevant to the facts alleged herein, Plaintiff CBD, INC. was and is a California nonprofit mutual benefit corporation duly organized and operating with its principal place of business in Orange County, California.

7.     At all times relevant to the facts alleged herein, Plaintiff TRINK HEALTH, INC. was and is a California nonprofit mutual benefit corporation duly organized and operating with its principal place of business in Los Angeles County, California.

8.     At all times relevant to the facts alleged herein, Plaintiff FIVE POINT VENTURES, INC.  was and is a California nonprofit mutual benefit corporation duly organized and operating with its principal place of business in Orange County, California.

9.     Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to the facts alleged herein, Defendant CITY OF HUNTINGTON PARK was a municipality operating in Los Angeles County, California.  Further, Defendant CITY OF HUNTINGTON PARK took the actions complained of herein, and the harms caused thereby occurred, in the County of Los Angeles, State of California such that the Court's exercise of jurisdiction over it is just and proper

10.     Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to the facts alleged herein, Defendant GRACIELA ORTIZ was and is an individual residing in the State of California, County of Los Angeles.  Further, Defendant GRACIELA ORTIZ took the actions complained of herein in her capacity as Mayor of Huntington Park, and the harms caused thereby occurred, in the County of Los Angeles, State of California such that the Court's exercise of jurisdiction over her is just and proper.

11.     Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to the facts alleged herein, Defendant MARILYN SANABRIA was and is an individual residing in the State of California, County of Los Angeles.  Further, Defendant MARILYN SANABRIA took the actions complained of herein in her capacity as Vice Mayor of Huntington Park, and the harms caused thereby occurred, in the County of Los Angeles, State of California such that the Court's exercise of jurisdiction over her is just and proper.

12.     Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to the facts alleged herein, Defendant KARINA MACIAS was and is an individual residing in the State of California, County of Los Angeles. Further, Defendant KARINA MACIAS took the actions complained of herein in her capacity as City Council Member of Huntington Park, and the harms caused thereby occurred, in the County of Los Angeles, State of California such that the Court's exercise of jurisdiction over her is just and proper.

13.     Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to the facts alleged herein, Defendant NATURAL COMPASSIONATE CENTER was and is a California corporation operating with its principal place of business in Los Angeles County, California. Further, Defendant NATURAL COMPASSIONATE CENTER took the actions complained of herein and the harms caused thereby occurred, in the County of Los Angeles, State of California such that the Court's exercise of jurisdiction over it is just and proper.

14.     Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to the facts alleged herein, Defendant MICHAEL A. SCHENONE was and is an individual residing in the State of California, County of San Mateo. Further, Defendant MICHAEL A. SCHENONE took the actions complained of herein and the harms caused thereby occurred, in the County of Los Angeles, State of California such that the Court's exercise of jurisdiction over him is just and proper.

15.     Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to the facts alleged herein, Defendant UNITED HEALTH & CARE CENTER was and is a California nonprofit mutual benefit corporation operating with its principal place of business in Orange County, California. Further, Defendant UNITED HEALTH & CARE CENTER took the actions complained of herein and

the harms caused thereby occurred, in the County of Los Angeles, State of California such that the Court's exercise of jurisdiction over it is just and proper.

16.     Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to the facts alleged herein, Defendant VIBHA C. PATEL was and is an individual residing in the State of California, County of Riverside. Further, Defendant VIBHA C. PATEL took the actions complained of herein and the harms caused thereby occurred, in the County of Los Angeles, State of California such that the Court's exercise of jurisdiction over her is just and proper.

17.     Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to the facts alleged herein, Defendant MIKE PATEL was and is an individual residing in the State of California, County of Los Angeles. Further, Defendant MIKE PATEL took the actions complained of herein and the harms caused thereby occurred, in the County of Los Angeles, State of California such that the Court's exercise of jurisdiction over him is just and proper.

18.     Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to the facts alleged herein, Defendant GOODNESS 4 LIFE was and is a California nonprofit mutual benefit corporation operating with its principal place of business in Orange County, California. Further, Defendant GOODNESS 4 LIFE took the actions complained of herein and the harms caused thereby occurred, in the County of Los Angeles, State of California such that the Court's exercise of jurisdiction over it is just and proper.

19.     Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to the facts alleged herein, Defendant ROBERT J. HODGE was and is an individual residing in the State of California, County of Santa Cruz. Further, Defendant ROBERT J. HODGE took the actions complained of herein and the harms caused thereby occurred, in the County of Los Angeles, State of California such that the Court's exercise of jurisdiction over him is just and proper.

20.    Plaintiffs are informed and believe, and based thereon allege that at all times relevant to the facts alleged herein, Defendant C4EVERSYSTEMS, LLC (hereinafter, "C4Ever") was and is a Delaware limited liability company operating with its principal place of business in Orange County, California. Further, C4Ever took the actions complained of herein and the harms caused thereby occurred, in the County of Los Angeles, State of California such that the Court's exercise of jurisdiction over it is just and proper.

21.    Plaintiffs are unaware of the true names, identities, and capacities, whether individual, associate, corporate, or otherwise of the Defendants DOES 1 through 100, inclusive, and for this reason said Defendants are sued herein by such fictitious names.  When Plaintiffs ascertain the true names, identities, or capacities of Defendants DOES 1 through 100, or any of them, Plaintiffs will amend this Complaint to allege the same.  Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to the facts alleged herein, each such fictitiously named Defendant was the agent, servant, associate, or employee of each of the other Defendants, and as such, was responsible in some manner for the acts, occurrences, happenings and/or omissions hereinafter alleged.

22.    Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to the facts alleged herein, each Defendant was the agent, servant or employee of each of the other Defendants, and as such, was acting within the course and scope of such agency or employment and with the express permission of, consent to and/or ratification by Defendants, and each of them.

23.    Plaintiffs are informed and believe, and based thereon allege, that each of the Defendants, including DOES 1 through 100, inclusive, were, at all times herein mentioned, acting in concert with, and in conspiracy with, each and every one of the remaining Defendants.

24.    Plaintiffs are informed and believe, and based thereon allege, that at the time the events complained of herein occurred, Defendants were engaged in a joint

enterprise, whether social or otherwise, that each benefited by, and held a pecuniary interest in, such that each Defendant is vicariously liable for the acts of each other Defendant.

25.     Wherever appearing in this Complaint, each and every reference to Defendants and to any of them, is intended to be and shall be a reference to all Defendants hereto, and to each of them, named and unnamed, including all fictitiously named Defendants, unless said reference is otherwise specifically qualified.

## GENERAL ALLEGATIONS

26.     C4Ever was founded by Michael Tuccelli-Margolin and Ronald Hodges.  C4Ever licensed the technology developed by General Payment Systems, Inc. to provide payment kiosks that can be used in medical marijuana dispensaries to eliminate cash handling by dispensary employees. The customer of the dispensary and dispensary or both are charged a fee for the service of providing a cashless management system.  C4Ever markets itself as a solution to alleviate the risk of operating a medical marijuana dispensary, typically a cash only enterprise.

27.     In 2015 Ronald Hodges, Michael Tuceelli-Margolin, Josef Bobek III and Larry Horwitz were each employed by or held ownership interest in C4Ever. Ronald Hodges and Michael Tuccelli-Margolin held themselves out to be co-owners of C4Ever.  Josef Bobek III was the Chief Operating Officer and legal consultant. Larry Horwitz was C4Ever's in-house securities attorney.

28.     Mr. Horwitz is currently a named partner of the Orange County based law firm H&A as well as General Counsel and Board member of Defendant MJIC Inc. ("MJIC").

29.     C4Ever's principals believed that it was in their best interest to convince a city to require that every dispensary enter a contract with a third-party provider who would provide a cashless management system.  Unfortunately for C4Ever, the attempts to convince any city to implement the third party payer

1  requirement fell on deaf ears.  In 2015, C4Ever's principals decided that it was in

2  the company's best interest to seek assistance from a lobbyist.

3       30.    It was around this time that C4Ever's principals made the acquaintance

4  of Efren Martinez, a "Mike Patel"(real name unknown), and Mario Beltran. Mr.

5  Martinez is a known "consultant" or lobbyist in the Southeast of Los Angeles

6  County.  Mr. Patel has interest in a hotel in the city of Lynwood and is also a

7  lobbyist in southeast Los Angeles County. Mr. Beltran was a former council

8  member in the city of Bell Gardens and is also a lobbyist. Mr. Martinez, Mr. Beltran

9  and Mr. Patel  are herein collectively referred to as the "Lobbyists."

10       31.    The C4Ever principals, MJIC and the Lobbyists conspired to develop a

11  plan in which each would profit off the issuance of medical marijuana dispensary

12  licenses in the city of Huntington Park.  By way of the agreement between the

13  C4Ever principals and the Lobbyists would convince the city council to draft a

14  medical marijuana ordinance which would allow up to three medical marijuana

15  dispensaries with on-site marijuana cultivation facilities in the city of Huntington

16  Park.  The dispensaries would be required to use a cashless payment system and be

17  charged by the third party cash management system for that service.

18       32.    It was agreed to by the Lobbyists, C4Ever and MJIC, represented by

19  Mr. Horwitz, that each of the consultants would be involved in the ownership or

20  control of the various dispensaries as well as obtain a percentage of the fees charged

21  by the cash management system.  Each of the principals of C4Ever would also be

22  involved in the ownership and control of the three dispensaries.

23       33.    Plaintiffs are informed and believe that the Lobbyists obtained the

24  agreement from Councilwoman Macias, Vice-Mayor Sanabria, and Mayor Ortiz,

25  prior to the drafting of the ordinance, that *only* the applications for the parties the

26  Lobbyists represented would be selected.

27       34.    All Defendants, including the Lobbyists, Mr. Martinez, Mr. Patel, Mr.

28  Beltran; the City Councilwomen, Ms. Macias, Ms. Ortiz and Ms. Sanbria; as well as

the principals of C4Ever, Mr. Tucellie-Margolin, Mr. Bobek; and MJIC devised a selection process to assure that only the three applications for the conspirators would be selected.

35.     In order to minimize competition from outside of the conspiracy and to make it easier for the City Council to only select the Dispensary defendants, it was agreed that upon passage of the medical marijuana ordinances the city would take the following actions as part of its official policy in implementing the ordinance.

    a.  Issue applications in a short period of time and close the acceptance of applications about two weeks later.

    b.  To further discourage applicants, the City of Huntington Park would charge a non-refundable fee of five thousand dollars ($5,000.00), which was above the actual cost of reviewing the applications.

    c.  To further discourage applicants, the City would require that the selection of the CUP recipients take place less than two weeks after the final submission day the application were to be received.

    d.  The Councilwomen would instruct the city attorney to draft language into the ordinance to prohibit other applicants from lobbying the city councilmembers to advocate for the merits of their application.

    e.  To avoid complications by the city staff, the Defendants agreed that the application process would circumvent city staff who would usually provide review and recommendations of any applicant. Instead the review of each and every application would rest solely on the city councilmembers.

36.     The Council thereafter instructed the city attorney, Arnold Alvarez-Glasman of the law firm of Alvarez-Glasman & Colvin to draft such an ordinance.

37.     On or around April 4, 2016, the City of Huntington Park ("City") adopted Ordinance Nos. 2016-945 and 2016-946 permitting and regulating the

operation of medical marijuana dispensaries and marijuana cultivation in Huntington Park.  The ordinances were drafted to provide anyone the ability to submit an application if they desired to operate a medical marijuana business in the city of Huntington Park. However, the application published by the city misrepresented the truth, that only the three applicants represented by the Lobbyist and MJIC would obtain approvals.

38.   Ordinance Nos. 2016-945 amended the City's municipal code to allow MMBs to operate in certain zones of the City.  An MMB was defined in the Ordinance as a medical marijuana dispensary, cultivation and manufacturing facility, or joint dispensary and cultivation and manufacturing facility.

39.   Ordinance No. 2016-946, among other things, added Article 24 to Title 3, Chapter 1 of the City of Huntington Park Municipal Code. Article 24, among other things, set forth the application process for obtaining the required permits to establish and operate an MMB in the City. A true and correct copy of Ordinance No. 2016-946 is attached hereto as **Exhibit 1** and incorporated herein.

40.   The relevant portions of Ordinance No. 2016-946 are as follows.

**3-1.2403 Medical Marijuana Business Permit Required**.

A.   Except for hospitals and research facilities that obtain written permission for marijuana cultivation under federal law, it is unlawful for any person to own, conduct, operate or maintain, or to participate therein, or to cause or to permit to be conducted, operated, or maintained, any medical marijuana business in the City unless there exists a valid Permit therefore, granted and existing in compliance with the provisions of this Article 24. It is unlawful to establish any outdoor cultivation and manufacturing facility within the City. It is unlawful for any entity organized on a for-profit basis, except for hospitals and research facilities, to engage in any medical marijuana business whatsoever.

B.    Any use or activity that involves possessing, cultivating, processing and/or manufacturing and/or more than 50 square feet of cultivation area in the City…

**3-1.2404 Permit Application**.

A.    On April 14, 2016, the City shall make available Permit application forms and a related administrative policy. Each medical marijuana business interested in operating pursuant to this Article may submit an application together with a nonrefundable processing fee in an amount established by the City Council within twenty (20) days after April 14, 2016. The City shall not accept applications or process applications after this time. Thereafter, whenever a medical marijuana business permit becomes available staff shall notify City Council, and after receiving direction from City Council, staff shall notify the public and open the application process for twenty (20) days from the public notice. The City shall not accept applications or process applications after this time.

B.    Applicants are ***prohibited from lobbying*** members of the City Council regarding the approval of a Permit. Applicants are ***prohibited from contacting*** any City Council member regarding a medical marijuana business or a Permit between the date that the applications become available and the date that the City Council acts on an application. Any attempt to contact a City Council member during this period shall disqualify the applicant from consideration for a Permit. [**Emphasis added**.]

C.    Applications for Permits shall be in writing on forms prepared

- 10 -

and provided by the City and shall be filed with the City.
Applicants are not required to have secured a final location for
the medical marijuana business at the time of applying.
However, final approval of a Permit is subject to having a
location selected and approved by the City. Such applications
shall be under oath, in duplicate…

**3-1.2405 Investigation**.

A.   The City Council shall cause investigations to be made to
ascertain what effect, if any, the issuance of the Permit will have
on the public peace, health, safety, and general welfare of the
City and its inhabitants.

**3-1.2406 Review and Issuance of Permit**.

A.   The City Council shall review all applications and shall consider
the issuance of Permits at the first City Council meeting after
close of the application submittal period. The issuance of a
Permit by the City Council shall be discretionary based on the
following review criteria:

1.   That the proposed medical marijuana business is
consistent with the intent of State law, the provisions of
this Article and the Municipal Code, including the
application submittal and operating requirements herein…

2.   That all required application materials have been provided.

3.   That the requested Permit would not exceed limitations on
number of licenses allowed by this Article…

B.   The City Council shall grant, conditionally grant, or deny the
application.

C.   The City Council shall issue no more than three (3) Permits for
the operation of medical marijuana businesses in the City. If

- 11 -

legalization of recreational marijuana passes at the state level, the number of Permits shall still be limited to the three (3) Permits referred to and stated in this subsection. A permittee may choose to open and operate a dispensary, a cultivation and manufacturing facility, or expand from either a dispensary or cultivation and manufacturing facility to both a dispensary and cultivation and manufacturing facility at the same location with City Manager approval.

D.    The determination of the City Council shall be final…."  [see **Ex. 1, pp. 19-26**.]

41.    Pursuant to Section 4 (Article 24, § 3-1.2404A) of Ordinance No. 2016-946, on April 14, 2016 the City was "to make available Permit Application forms and a related administrative policy." Instead on that date the City issued a document entitled "Medical Marijuana  Business Permit Application Guidelines" ("Guidelines").  Attached to the Guidelines were the Permit Application forms.  A true and correct copy of the Guidelines with Permit Application forms is attached hereto as **Exhibit 2** and incorporated herein by this reference.

42.    The City issued its "Administrative Policy Regarding Medical Marijuana Business and Delivery Permits" (the "Policy") on or around April 27, 2016.  It required applicants to sign a statement that the applicant acknowledges "receipt, review and understanding" of the Policy. A true and correct copy of the Policy is attached hereto as **Exhibit 3** and incorporated herein by this reference.

43.    Among other provisions, the Policy contained the following language. **Applications will be deemed incomplete, disqualified and denied approval if**:…

3.    Applicants are ***prohibited from lobbying*** any Huntington Park City Council Member or any employee of the City of Huntington Park regarding

- 12 -

a medical marijuana business or a Permit Application between the date applications become available and the date the City Council acts on an application. *Any attempt to lobby* a City Council member or any employee of the City of Huntington Park during this period *shall disqualify* the applicant from consideration for a Permit.

[**Emphasis added**.]

2. <u>**Application Procedure**</u>

Applications for Permits will become available on April 14, 2016 and will not be accepted until April 21, 2016. All Applications will be <u>**due by 5:30 p.m. on May 4, 2016**</u>…

Applications for permits will be approved based upon the discretion of the City Council. Based on the amount of applications received, Applications for Medical Marijuana Business Permits and Medical Marijuana Delivery Permits will be considered on May 17, 2016 by the City Council. Upon the submittal of the above-mentioned materials and payment of fees, each application will be assigned a case number (e.g. MMBP 2016-01 or MMDP 2016-01). The Applicant, business owner, and/or a representative will be required to attend the City Council meeting held on the date listed above, and be prepared to address the City Council and answer questions and present evidence supporting the application for a Permit.

All Applicants will be required to submit an application form, with required attachments, and a *nonrefundable application fee of $5,000* and any additional fees that may be required. Complete

PLAINTIFFS' FIRST AMENDED COMPLAINT

1    applications submitted by the deadline ***will be redacted***,

2    ***identified only by the assigned reference number*** and submitted

3    to the City Council.

4    Applicants must provide one (1) original application packet with

5    original wet signatures and six (6) additional copies. [**Emphasis**

6    **added**.]

7    **3.**    <u>**Permit Evaluation and Award Process**</u>

8    All Applications that have met all requirements, which include

9    turning in the Application on time and paying the requisite fee(s)

10    shall be deemed eligible for consideration.

11    **A.**    **Medical Marijuana Business Permits**

12    The evaluation and award process will consist of 3 steps, at the

13    end of which a maximum of three (3) Medical Marijuana

14    Business Permits may be awarded…

15    <u>Step 1</u>

16    City Council shall be responsible for reviewing all eligible

17    *redacted* Applications individually and at their own leisure prior

18    to the awarding date (see B2 on the diagram). [**Emphasis**

19    **added**.]

20    <u>Step 2</u>

21    On the applicable evaluation and award date, each City Council

22    Member shall nominate up to five (5) different Applicants,

23    deemed eligible for consideration, to be eligible for the interview

24    process. Any applicant that

25    receives nominations from at least two (2) City Council

26    Members will move on to the interview stage.

27    <u>Step 3</u>

28    Applicants that have been selected to participate in the interview

- 14 -

stage shall receive five (5) minutes to give a short presentation and afterwards make themselves available to answer any questions from city council members.

Upon the conclusion of City Council interviews of all presenters based on Step 2 of this process, the City Council shall then deliberate and may select up to three (3) different applicants they deem qualified to be awarded a Medical Marijuana Business Permit. The selection shall be made through individual motions for each Medical Marijuana Business Permit (up to three permits/business licenses) of which each require a second and thereafter a majority vote of the council in order to award each Medical Marijuana Business Permit. The City reserves all rights not to award any Medical Marijuana Business Permits at the conclusion of this 3-step process….." [**See Ex. 3, pp. 3-5**.]

44.   The application process required submission of a non-refundable $5,000.00 application fee.  The names of the company and individual applicants were to be redacted, and this requirement was presented to applicants as being based on the need for anonymity and the elimination of potential bias in the selection process.  [**See Ex. 2, p. 3; Ex. 3, p. 4**.]

45.   On May 17, 2016, the hearing to nominate up to five of the applicants, and select up to three, transpired.  Prior to the "review" of the applications, Ortiz made it is a point to verbally represented that the process was "transparent" and that every applicant had the opportunity to be chosen, despite the fact that each of the Councilwomen knew that they would only be selecting the three Defendant dispensaries charged in this complaint and represented by the Lobbyists and MJIC.  Only councilman Valentin Amezquita took the position that the whole process was illegal and that he would not take part.

46.   The applicants were identified by numbers.  The City Council made the

following nominations (the applicants that received the requisite number of two

votes are in bold): [1]

Graciela Ortiz, Mayor        **5**, 16, **7, 2, 4**

Marilyn Sanabria, Vice Mayor  18, **5, 7, 4, 2**

Karina Macias, Member        **5, 11, 2**, 3, **4**

Valentin P. Amezquita, Member        No Nominations

Jhonny Pineda, Member        10, 12, 1, **11**, 23

47.    The five applicants that were nominated were then interviewed.

Following the interviews, motions to approve were made for four of the

nominated applicants. Three of the motions were passed and one failed.

The votes were:

**Applicant 2** (MMBP-2016-02):  motion passed 4-1

Graciela Ortiz, Mayor: Y

Marilyn Sanabria, Vice Mayor: Y

Karina Macias, Member: Y

Valentin P. Amezquita, Member: N

Jhonny Pineda, Member: Y

**Applicant 4** (MMBP-2016-04): motion passed 3-2

Graciela Ortiz, Mayor: **Y**

Marilyn Sanabria, Vice Mayor: **Y**

Karina Macias, Member: **Y**

Valentin P. Amezquita, Member: N

---

[1]    The applicants corresponding to the numbers which received at least two votes
and were therefore nominated were:
**Applicant 2** (MMBP-2016-02): Goodness for Life; Robert Hodge
**Applicant 4** (MMBP-2016-04): United Health and Care Center; Vibha C. Patel
**Applicant 5** (MMBP-2016-05): Natural Compassionate Center; Michael Schenone
**Applicant 7** (MMBP-2016-07): Green Earth; Joel and Jennifer Machuca
**Applicant 11** (MMBP-2016-11): Theraleaf

1   Jhonny Pineda, Member: N

2   **Applicant 5** (MMBP-2016-05):  motion passed 3-1-1

3   Graciela Ortiz, Mayor: **Y**

4   Marilyn Sanabria, Vice Mayor: **Y**

5   Karina Macias, Member: **Y**

6   Valentin P. Amezquita, Member: N

7   Jhonny Pineda, Member: ABSTAIN

8   **Applicant 11** (MMBP-2016-11):  motion failed 2-3

9   Graciela Ortiz, Mayor: N

10   Marilyn Sanabria, Vice Mayor: **Y**

11   Karina Macias, Member: N

12   Valentin P. Amezquita, Member: N

13   Jhonny Pineda, Member: **Y**

14   48.   The first permit was given to Natural Compassionate Center ("NCC")

15   and Michael Schenone ("Schenone").  NCC and Mr. Schenone were represented at

16   the hearing by Mikey Tuccelli-Margolin, who is VP of  Operations of Defendant

17   C4Ever.  C4Ever provides cash management, cash security and cash processing

18   systems for MMBs and the cannabis industry. [**See http://c4eversystems.com/**]

19   49.   NCC's and Mr. Schenone's application contained what appeared to be

20   marketing materials of C4Ever.  NCC's name was **not** redacted from their

21   application as required in the Guidelines and the Policy. [**See Ex. 2, p. 3; Ex. 3, p.**

22   **4**.]

23   50.   The second permit was given to United Health & Care Center

24   ("UHCC") and Vibha C. Patel.  The application of UHCC and Vibha Patel

25   contained what appeared to be marketing materials of C4Ever—the same or very

26   similar to those contained in the application of NCC and Mr. Schenone.  UHCC and

27   Vibha Patel were represented at the hearing by Larry Horwitz of Defendant Horwitz

28   + Armstrong, PLC ("H&A"). H&A are named as UHCC's legal consultant in

- 17 -

UHCC's application. UHCC's articles of incorporation were signed and filed with the Secretary of State by Stephen M. Callegari, an attorney at H&A, on April 8, 2016. Plaintiffs are informed and believe, and based thereon allege, that Horwitz is or was an advisor of C4Ever.  UHCC's corporate address is 14 Orchard, Suite 200, Lake Forest, California 92630.  Defendant MJIC is the  management company of UHCC who is located at the same address as UHCC. UHCC's name was **not** redacted from the application as required in the Guidelines and the Policy. [**See Ex. 2, p. 3; Ex. 3, p. 4**.]

51.     The third and final permit was given to Goodness 4 Life ("G4L") and Robert Hodge ("Hodge"). Plaintiffs are informed and believe, and based thereon allege, that Hodge is the brother of Greg Hodge, who is the current CEO of C4. The application of G4L and Hodge contained what appeared to be marketing materials of C4Ever, the same or very similar to those contained in the application of NCC and Mr. Schenone and the application of UHCC and Vibha Patel.  As was the case with UHCC, G4L's articles of incorporation were signed and filed with the Secretary of State by Stephen M. Callegari, an attorney at Horwitz + Armstrong, PLC ("H&A"), on April 8, 2016.

52.     G4L's corporate address is 14 Orchard, Suite 200, Lake Forest, California 92630, the same corporate address as UHCC and MJIC. G4L's name was not redacted from the application as required in the Guidelines and Policy. [**See Ex. 2, p. 3; Ex. 3, p. 4**.]

53.     Plaintiffs are informed and believe, and based thereon allege, that Defendants City, Ms. Ortiz, Ms. Sanabria, and Ms. Macias had determined, prior to the submission of the applications, which three entities or people would receive the permits, and nevertheless accepted and kept the $5000.00 nonrefundable fee paid by each Plaintiff knowing in advance that none of the Plaintiffs would be awarded a permit. Defendants purposely misrepresented the facts that the application process was transparent and that all applicants had the opportunity to qualify.  This was

further propagated by Mayor Ortiz and the other Councilwomen's statements and their actions at the May 17, 2016 council meeting.

54.     Plaintiffs are informed and believe, and based thereon allege, that this decision resulted from the collusive agreement between and among the Defendants to effect an illicit official City policy that would ensure that only their pre-determined entities receiving permits, while defrauding other applicants, including Plaintiffs, of their application fees and depriving them of a fair opportunity to obtain permits.  In particular, C4Ever, NCC, Mr. Schenone, UHCC, Mr. Patel, MJIC, G4L and Mr. Hodge engaged in unlawful activity to convince the City, Ms. Ortiz, Ms. Sanabria and Ms. Macias to vote in favor of three particular entities, NCC, UHCC and G4L, in violation of Ordinance No. 2016-946, City's Guidelines and City's Policy. [**See Ex. 1, pp. 20-21, Section 3-1.2404 B; Ex. 3, p.3**.]

55.     Plaintiffs are informed and believe, and based thereon allege, that the City, Ms. Ortiz, Ms. Sanabria and Ms. Macias engaged in public corruption by, after they agreed as part of the conspiracy to award permits to NCC/Schenone, UHCC/Patel and G4L/Hodge, enacting Ordinance 2016-946 that prevented any other applicant or their agent from lobbying members of the City Council, which absent the Ordinance may have resulted in a member or members of the City Council changing their mind and reneging on the secret agreement to award the permits to NCC/Schenone, UHCC/Patel and G4L/Hodge. [**See Ex. 1, pp. 20-21, Section 3-1.2404 B**.]

56.     Plaintiffs are informed and believe, and based thereon allege, that the enterprise also involved public corruption in the way of bribes that Defendants C4Ever, NCC, Mr. Schenone, UHCC, Mr. Patel, MJIC, G4L and Mr. Hodge gave, or offered to give to Ms. Ortiz, Ms. Sanabria and Ms. Macias and each of them received, or agreed to receive in exchange for each of their agreement to vote to award the three MMB permits to NCC/Schenone, UHCC/Patel and G4L/Hodge.

57.     The motivation behind this enterprise was to ensure that the software

and other products and services provided by C4Ever would be employed in all of the legal medical marijuana operations in Huntington Park.  Plaintiffs are informed and believe, and based thereon allege, that C4Ever is currently in the process of working with NCCC, UHCC and G4L, each involving contracts resulting in substantial monetary benefits to C4Ever.

58.     As evidence of the scheme, the applications for NCC, UHCC, and G4L were not redacted in violation of the City's Guidelines and Policy that all eligible applications submitted to the City Council would be redacted so that they are identified only by an assigned reference number, and notwithstanding the statement by City Attorney confirming, prior to the nominations by the City Council, that "each council member read redacted applications" in which the name of the business entity and individual applicant were redacted. [**See Ex. 2, p. 3; Ex. 3, p. 4**.] Thereby the execution of the decision by City, Ortiz, Sanabria and Macias, as to which applications to nominate and then award permits was facilitated because they were identified by name not by just by a random number, which should have been the case pursuant to City law and Policy.

59.     On that day Ms. Ortiz, Ms. Macias, and Ms. Sanabria voted for to provide the entites represented by the C4Ever principals only. It should be noted that although the names of the applicants were to be removed or redacted per the instructions, the names of the selected applicants were not redacted. Indeed, it was the principals of C4Ever who were the "representatives" of the applicants at the May 17, 2016 meeting. Mr. Larry Horwitz, Mr. Michael Tuccelli-Margolin and Mr. Ronald Hodge's family member Mr. Robert Hodge represented the winning applicants at the CUP hearing.  The winning applicants were NATURAL COMPASSIONATE CENTER, a California Nonprofit Mutual Benefit Corporation; UNITED HEALTH & CARE CENTER, a California Nonprofit Mutual Benefit Corporation and GOODNESS 4 LIFE, a California Nonprofit Mutual Benefit Corporation. It should be noted that United Health & Care Center as well as

Goodness 4 Life corporations were both incorporated by Stephen M. Callegari, a junior associate at Mr. Larry Horwitz law firm. Mr. Josef Bobek III served as Natural Compassionate Center's agent for service of process during the relevant period.

60.     Plaintiffs are informed and believe, and based thereon allege, that unlike Plaintiffs none of the three applicants awarded the permits, *i.e.* NCC, UHCC, and G4L, had ever operated a medical marijuana business prior to submitting the applications.

61.     On September 26, 2016, Plaintiffs MKAY, GAGE, FRI, GGMH, CRUZ, CBD and TRINK each filed a Claim for Damage with City pursuant to the California Tort Claims Act. On October 4, 2016, Plaintiff FPV filed its Claim for Damage with City pursuant to the California Tort Claims Act.

62.     On  October 13, 2016, the City served each Plaintiff with a Notice of Claim Insufficiency  stating that that the claim submissions were deficient pursuant to California Government Code § 910(c). The Notice stated that each Plaintiff had fifteen days to file amended claims correcting the deficiencies.  On October 20, 2016, Plaintiffs each filed an amended Claim for Damage complying with City's Notice that the alleged deficiencies be corrected.

63.     On November 28, 2016, the City served each Plaintiff with a Notice of Rejection of Claim.  Each Plaintiff has thus exhausted its administrative remedies.

**FIRST CAUSE OF ACTION**

**Civil Conspiracy**

(Against All Defendants COMPASSIONATE CENTER; MICHAEL A. SCHENONE; UNITED HEALTH & CARE CENTER; VIBHA C. PATEL; GOODNESS 4 LIFE; ROBERT J. HODGE; C4EVERSYSTEMS, LLC; MJIC, INC. and MIKE PATEL)

64.     Plaintiffs hereby incorporate by this reference the allegations of paragraphs 1 through 63 above as though set forth in full herein.

65.     Defendants knowingly and willfully conspired and agreed among themselves to defraud Plaintiffs by soliciting them to apply for the permits to operate a medical marijuana business in the City of Huntington Park, while having had already predetermined NCC/Schenone, UHCC/Patel and G4L/Hodge would be awarded the three permits.

66.     Pursuant to said conspiracy, and in furtherance thereof, the City, Ms. Ortiz, Ms. Sanabria, and Ms. Macias accepted a $5,000.00 nonrefundable fee from each of the Plaintiffs, even though they never intended to provide any consideration to the Plaintiffs' permit applications.

67.     Pursuant to said conspiracy, and in furtherance thereof, C4Ever, NCC, Schenone, UHCC, Patel, MJIC, G4L and Hodge lobbied, in violation of Ordinance 2016-946 and City Policy, and convinced the City, Ms. Sanabria, Ms., Macias, and Ms. Ortiz to award NCC/Schenone, UHCC/Patel and G4L/ Hodge the three permits. [**See Ex. 1, pp. 20-21, Section 3-1.2404 B; Ex. 3, p.3**.]

68.     Pursuant to said conspiracy, and in furtherance thereof, C4Ever, NCC, Mr. Schenone, UHCC, Mr. Patel, MJIC, G4L, and Mr. Hodge bribed Ms. Ortiz, Ms. Sanabria, and Ms. Macias with moneys and/or other things of value.

69.     Pursuant to said conspiracy, and in furtherance thereof, Ms. Ortiz, Ms. Sanabria, and Ms. Macias accepted said bribes of moneys and/or other things from C4Ever, NCC, Mr. Schenone, UHCC, Mr. Patel, MJIC, G4L, and Mr. Hodge.

70.     Pursuant to the conspiracy, and in furtherance thereof, the City, Ms. Ortiz, Ms. Sanabria, and Ms. Macias, after they agreed as part of the conspiracy to award permits to NCC/Schenone, UHCC/Patel and G4L/Hodge, adopted Ordinance No. 2016 946 that prevented any other applicant or their agent from lobbying members of the City Council, which absent the Ordinance may have resulted in a member or members of the City Council changing their mind andreneging on the secret agreement to award the permits to NCC/Schenone, UHCC/Patel and G4L/Hodge. [**See Ex. 1, pp. 20-21, Section 3-1.2404 B**.]

71.     Pursuant to said conspiracy, and in furtherance thereof, Ms. Ortiz, Ms. Sanabria and Ms. Maccias voted, on the awarding of medical marijuana business permits brought before them in their official capacity as members of the City Council, in favor of NCC/Schenone, UHCC/Patel and G4L/Hodge.

72.     Pursuant to said conspiracy, and in furtherance thereof, Defendants, and each of them, fraudulently concealed from Plaintiffs material facts regarding their actions to defraud Plaintiffs.

73.     As a proximate result of the wrongful and illegal conduct of Defendants, and each of them, Plaintiffs suffered damages by being deprived of money paid for non-refundable permit application fees and moneys expended in drafting the lengthy permit application documents, and by losing the opportunity to operate their businesses in Huntington Park.

74.     Defendants, and each of them, committed the wrongful conduct herein alleged maliciously and to oppress Plaintiffs. Plaintiffs are therefore entitled to exemplary or punitive damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### Fraud

(Against Defendants City, Ortiz; Sanabria and Macias By All Plaintiffs)

75.     Plaintiffs hereby incorporate by this reference the allegations of paragraphs 1 through 74 above as though set forth in full herein.

76.     Defendants engaged in conduct, in particular the defrauding of Plaintiffs by soliciting them to apply for the permits under the auspicious that every applicant had an opportunity to be chosen.  This misrepresentation was propagated by the city as well as the City Councilwomen even though the Councilwomen knew that they would only choose the Dispensary Defendants represented by the Lobbyist to operate a medical marijuana business in the City of Huntington Park.

77.     In addition to making implicit and explicit misrepresentations to Plaintiffs, the City and Councilwomen knowingly accepted a $5,000.00

PLAINTIFFS' FIRST AMENDED COMPLAINT

1   nonrefundable application fee from each of the Plaintiff with the intention of only
2   voting for the Defendant Dispensaries and individuals represented by the Lobbyists.
3       78.   The City further represented to the public, by and through its agents,
4   officials, and publication, that they would be accepting applications for
5   consideration to be awarded permits to operate medical marijuana businesses in the
6   City of Huntington Park.
7       79.   Defendants reasonably believed that Plaintiffs would and did rely upon
8   their representations and Plaintiffs reasonably relied upon Defendants''
9   representation, as they were by The City of Huntington Park and City Council in
10  their official capacity to draft regulations and guidelines for awarding of permits
11  within their municipality.
12      80.   Plaintiffs applications were never given the promised fair
13  consideration, as Defendants had already preselected what entities would be
14  awarded the permits.
15      81.   Defendants' conduct amount to fraud pursuant to California Civil Code
16  §§ 1572, 1709, and 1710.

17              **THIRD CAUSE OF ACTION**
18      **Violation of Rights Under First Amendment To US Constitution**
19                  **[42 USC § 1983]**
20      (Against Defendants City, Ortiz, Sanabria, and Macias By All Plaintiffs )
21      82.   Plaintiffs hereby incorporate by this reference the allegations of
22  paragraphs 1 through 81 above as though set forth in full herein.
23      83.   City Ordinance No. 2016-946 is an unconstitutional abridgment on its
24  face, and as applied, of Plaintiffs' affirmative rights to freedom of speech under the
25  United States Constitution, First and Fourteenth Amendments.
26      84.   City Ordinance No. 2016-946, on its face and as applied, is an
27  unconstitutionally overbroad restriction on expressive activity.
28      85.   City Ordinance No. 2016-946, on its face and as applied, is a content-

- 24 -

1  based and viewpoint-based restriction on speech.

2  86.  City Ordinance No. 2016-946, on its face and as applied, did not serve

3  a significant governmental interest.

4  87.  City Ordinance No. 2016-946, on its face and as applied, did not leave

5  open ample alternative channels of communication.

6  88.  City Ordinance No. 2016-946, on its face and as applied, is neither

7  narrowly tailored nor the least restrictive means to accomplish any permissible

8  governmental purpose sought to be served by the Ordinance.

9  89.  City Ordinance No. 2016-946 is an irrational and unreasonable statute,

10  imposing unjustifiable restrictions on the exercise of protected constitutional rights.

11  90.  City Ordinance No. 2016-946, on its face and as applied, violates the

12  California State Constitution by denying Plaintiffs' free speech rights and other

13  protections of state and federal law.

14  <u>**FOURTH CAUSE OF ACTION**</u>

15  **Violation of Rights Under Fifth and Fourteenth Amendment To US**

16  **Constitution [42 USC § 1983]**

17  (Against Defendants City, Ortiz, Sanabria and Macias by All Plaintiffs )

18  91.  Plaintiffs hereby incorporate by this reference the allegations of

19  paragraphs 1 through 90 above as though set forth in full herein.

20  92.  Defendant's denied Plaintiffs to procedural due process under the law

21  as the application and selection process detailed in Ordinances No. 2016-945 and

22  2016-946 were arbitrary and without consequence.

23  93.  Defendants had previously agreed to vote only for the dispensary

24  Defendants represented by Lobbyists regardless of other applicants.  This agreement

25  and its implementation were part of the City's official policy to defraud applicants

26  and ensure that only their pre-determined candidates would obtain permits.

27  94.  Defendants purposely misrepresented to Plaintiffs and the public that

28  the selection process would not be arbitrary and would be transparent.

95.    Plaintiffs reasonably relied and paid a non-refundable application fee of $5,000.00 and submitted to the procedure.

96.    Defendants knowingly accepted the applications without providing consideration to the Plaintiffs' application, summarily denying all applicants.

97.    City action of creating a sham application and selection process violates the United States Constitution fifth and fourteenth amendment right to procedural due process under the law.

### FIFTH CAUSE OF ACTION

### Violation of California Constitution, Article I, § 2

(Against Defendants City, Ortiz, Sanabria and Macias by All Plaintiffs)

98.    Plaintiffs hereby incorporate by this reference the allegations of paragraphs 1 through 96 above as though set forth in full herein.

99.    City Ordinance No. 2016-946, on its face and as applied, violates Article I, § 2 of the California Constitution.

### JURISDICTION AND VENUE

100.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 12 U.S.C. § 2614 because the matter arises under federal law, specifically, 42 U.S.C. 1983.

101.   Venue is proper in this district under 28 U.S.C. § 1391(b) and 12 U.S.C. § 2614 because the substantial part of the events or omissions giving rise to the claims occurred in this district.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that the Court:

1.    enter judgment in favor of Plaintiffs and against Defendants, jointly and severally;

2.    issue a declaratory judgment declaring that City of Huntington Park Municipal Code Title 3, Chapter 1, Article 24 is unconstitutional on its

- 26 -

PLAINTIFFS' FIRST AMENDED COMPLAINT

1           face;

2      3.     issue a declaratory judgment declaring that City of Huntington Park

3            Municipal Code Title 3, Chapter 1, Article 24 is unconstitutional as

4            enforced and as applied;

5      4.     issue a temporary restraining order, and a preliminary and permanent

6            injunction preventing the City of Huntington Park from enforcing City

7            of Huntington Park Municipal Code Title 3, Chapter 1, Article 24;

8      5.     enter judgment for general damages in an amount to be determined by

9            proof at trial;

10     6.     enter judgment for punitive damages in an amount to be proven at trial;

11     7.     enter judgment for damages in an aggregate amount of no less than

12           seventy five thousand dollars ($75,000.00);

13     8.     enter judgment for interest thereon at the legal rate;

14     9.     award Plaintiffs' costs of this action and attorneys' fees; and

15    10.    award such other and further relief as the Court deems just and proper.

16

17

18    DATED:  May 22, 2017        D | R WELCH ATTORNEYS AT LAW

19                          A PROFESSIONAL CORPORATION

20                         By:  /s/ David R. Welch

21                          DAVID R. WELCH

22                         *Attorneys for Plaintiffs*

23                         *MKAY, INC., CRUZ VERDE, INC.,*
                              *GAGE COLLECTIVE, INC.,*

24                         *FLOWER REFINERY, INC.,*
                              *GO GREEN MEDICAL HOLDINGS, INC.,*

25                         *CBD, INC., TRINK HEALTH, INC. and*
                         *FIVE POINT VENTURES, INC.*

26

27

28