# EXHIBIT 1

ORDINANCE NO. <u>2016-946</u>

**AN ORDINANCE OF THE CITY COUNCIL OF THE CITY OF HUNTINGTON PARK AMENDING ARTICLE 19 OF CHAPTER 7, OF TITLE 4 OF THE HUNTINGTON PARK MUNICIPAL CODE, RELATING TO MEDICAL MARIJUANA DELIVERIES, AND AMENDING CHAPTER 1 OF TITLE 3 OF THE HUNTINGTON PARK MUNICIPAL CODE BY ADDING ARTICLE 24 RELATING TO MEDICAL MARIJUANA DISPENSARY AND CULTIVATION PERMITS**

**WHEREAS**, California Constitution Article 11, Section 7 authorizes the City of Huntington Park ("City") to make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws;

**WHEREAS**, in 1996, with the adoption of Proposition 215, the California voters approved the Compassionate Use Act (Health and Safety Code § 11362.5) to grant seriously ill Californians the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician, without fear of criminal prosecution under limited, specified circumstances;

**WHEREAS**, subsequent State legislation sought to clarify the scope of the Compassionate Use Act and provide additional statutory guidance regarding medical marijuana use, these statutes are codified at Health and Safety Code § 11362.7 et seq. and allow cities and counties to adopt supplemental rules and regulations;

**WHEREAS**, In 2011, Assembly Bill 1300 was adopted and codified as Health & Safety Code Section 11362.83 to clarify that cities are free to adopt and enforce local ordinances that regulate the location, operation, or establishment of medical marijuana cooperatives or collectives;

**WHEREAS**, in City of Riverside v. Inland Empire Patients Health and Wellness Center, Inc. (2013) 56 Cal.4th 729, the California Supreme Court held that "[n]othing in the CUA or the MMP expressly or impliedly limits the inherent authority of a local jurisdiction, by its own ordinances, to regulate the use of its land. . . . " Additionally, in Maral v. City of Live Oak (2013) 221 Cal.App.4th 975, the Court of Appeal held that

- 1 -

1  "there is no right – and certainly no constitutional right – to cultivate medical
2  marijuana. . . . ."   The Court in Maral affirmed the ability of a local governmental
3  entity to regulate the cultivation of marijuana under its land use authority;

4       WHEREAS, on October 9, 2015 Governor Brown signed 3 bills into law (AB
5  266, AB 243, and SB 643) which collectively are known as the Medical Marijuana
6  Regulation and Safety Act (hereafter "MMRSA").   The MMRSA set up a State
   licensing scheme for commercial medical marijuana uses while protecting local
7  control by requiring that all such businesses must have a local license or permit to
8  operate in addition to a State license.   The MMRSA allows the City to regulate
9  commercial medical marijuana activities and marijuana cultivation;

10      WHEREAS, the City Zoning Code currently prohibits medical marijuana
11  dispensaries or any marijuana business as a use, which renders any such use an
12  illegal public nuisance per se and the City Municipal Code currently prohibits medical
13  marijuana delivery;

14      WHEREAS, under the principles of permissive zoning, the existing City Zoning
15  Code prohibits marijuana cultivation Citywide but the Zoning Code and Municipal
16  Code do not expressly address or regulate the existence or location of marijuana
17  cultivation;

18      WHEREAS, it is the desire of the City Council that City residents suffering from
19  life threatening or serious illnesses have access to a safe and affordable supply of
20  medical marijuana;

21      WHEREAS, the unregulated presence of marijuana cultivation operations and
22  medical marijuana dispensaries have the potential to lead to: (1) an increase in
23  break-ins and thefts due to the high monetary value of marijuana plants; (2)
24  dangerous alterations to the electrical wiring of buildings; (3) an increase in the
   amount of mold spores present in buildings; (4) the potential for exposure to or
25  increased usage by school aged children; and (5) the emittance of strong or noxious
26  odors from the marijuana plants;

27

28

- 2 -

1   **WHEREAS,** the City has a compelling interest in protecting the public health,
2   welfare and safety of its residents, as well as preserving the peace and quiet of the
3   neighborhoods in the City;

4   **WHEREAS,** it is the desire of the City Council to permit and regulate medical
5   marijuana cultivation, medical marijuana dispensaries, and medical marijuana
6   delivery within the City and establish a permitting process in order to impose
7   regulations that will allow for limited medical marijuana deliveries within the City and
8   a limited number of regulated medical marijuana dispensaries and medical marijuana
9   cultivation facilities to operate within the City while protecting the peace, health,
    safety and welfare of patients, and the community as a whole;

10  **WHEREAS,** in recent years a number of California cities have adopted
11  ordinances permitting and regulating medical marijuana dispensaries and/or medical
12  marijuana cultivation;

13  **WHEREAS,** signature gathering is currently underway for an initiative that
14  would permit the use of recreational marijuana within the State;

15  **WHEREAS,** if marijuana becomes recreationally legal within the State the
16  State of California may further regulate the use of marijuana;

17  **WHEREAS,** the City desires to adopt a marijuana business regulatory scheme
18  within the City that limits any future need to expend valuable resources in amending
19  its marijuana regulations to address recreational marijuana uses;

20  **WHEREAS,** it is the City Council's intention that nothing in this ordinance shall
21  be construed to allow persons to engage in conduct that endangers others or causes
22  a public nuisance, to allow the use of marijuana for non-medical purposes, or to allow
23  any activity relating to marijuana that is otherwise illegal and not permitted by state
24  law.

25  **NOW, THEREFORE,** the City Council of the City of Huntington Park does
    hereby ordain as follows:

26  **SECTION 1.** Findings and Purpose. The City Council finds and declares that
27  the above recitals are true and correct and hereby incorporate them herein by this
28  reference.

- 3 -

**SECTION 2.**   Authority.   This ordinance is adopted pursuant to the authority granted by the California Constitution and State law, including but not limited to Article XI, Section 7 of the California Constitution, the Compassionate Use Act, the Medical Marijuana Program, and The Medical Marijuana Regulation and Safety Act.

**SECTION 3.**   Article 19 of Title 4, Chapter 7, of the Huntington Park Municipal Code, entitled "Mobile Marijuana Dispensaries," is hereby amended in its entirety to read as follows:

**Article 19 – Medical Marijuana Delivery**

**Sections:**

**4-7.1901 Purpose and Intent.**
**4-7.1902 Definitions.**
**4-7.1903 Medical Marijuana Delivery.**
**4-7.1904 Medical Marijuana Delivery Permit Required.**
**4-7.1905 Permit Application.**
**4-7.1906 Investigation.**
**4-7.1907 Review and Issuance of Permit.**
**4-7.1908 Permit Expiration and Renewal.**
**4-7.1909 Permit Suspension and Revocation.**
**4-7.1910 Permit Assignability.**
**4-7.1911 Regulatory Fee and Seller's Permit.**
**4-7.1912 Examination of Books, Records, Witnesses.**
**4-7.1913 Liability and Indemnification.**
**4-7.1914 Violations and Enforcement.**

**4-7.1901 Purpose and Intent.**

The City Council of the City of Huntington Park hereby finds and determines that it is the purpose and intent of this article to regulate medical marijuana delivery services in order to promote the health, safety, morals and general welfare of the residents and businesses within the City.

**4-7.1902 Definitions.**

For the purposes of this Article, unless otherwise apparent from the context, certain words and phrases used in this Article are defined as follows:

A.      "Applicant" shall mean a person who is required to file an application for a Medical Marijuana Delivery Permit under this Article, including an individual owner, managing partner, officer of a corporation, or any other

- 4 -

operator, manager, employee, or agent of a medical marijuana dispensary.

B.  "Business" means and includes all kinds of vocations, occupations, professions, trades, exhibitions, shows, enterprises, and establishments and all other kinds of activities and means of livelihood, whether or not carried on for profit or gain.

C.  "Marijuana" shall have the same meaning as Health and Safety Code § 11018, as amended from time to time. Marijuana shall also include any marijuana-infused product and any product manufactured from marijuana.

D.  "Medical marijuana" means marijuana authorized in strict compliance with Health & Safety Code §§ 11362.5, 11362.7 et seq., as such sections may be amended from time to time.  Medical marijuana shall also include any marijuana-infused product and any product manufactured from marijuana.

E.  "Medical Marijuana Business Permit" shall mean the permit required to operate a medical marijuana dispensary, cultivation and manufacturing facility, or joint medical marijuana dispensary and cultivation and manufacturing facility within the City of Huntington Park pursuant to Title 3, Chapter 1, Article 24, of this Code.

F.  "Medical Marijuana Delivery Permit," hereinafter "Permit," shall mean the permit required to deliver medical marijuana within the City of Huntington Park.

G.  "Medical marijuana dispensary," or "dispensary" shall mean any association, cooperative, affiliation, or collective of persons that offers medical marijuana or medical marijuana products, either individually or in any combination, for retail sale. A dispensary shall not include dispensing by primary caregivers to qualified patients in the following locations, so long as the location of the clinic, health care facility, hospice, or residential care

- 5 -

facility is otherwise permitted by the Municipal Code or by applicable state laws

1. A clinic licensed pursuant to Chapter 1 of Division 2 of the state health and Safety Code;
2. A health care facility licensed pursuant to Chapter Two of Division of the state Health and Safety Code;
3. A residential care facility for persons with chronic life-threatening illness licensed pursuant to Chapter 3.01 of Division 2 of the state health and Safety Code;
4. A residential care facility for the elderly licensed pursuant to Chapter 3.2 of division 2 of the state Health and Safety Code;
5. A residential hospice or a home health agency licensed pursuant to Chapter 8 of Division 2 of the state Health and Safety Code;

provided that any such clinic, health care facility, hospice or residential care facility complies with applicable laws, including, but not limited to, Health and Safety Code § 11362.5.

H. "Permittee" shall mean a business that has obtained a Permit under this Article.

I. "Person" shall mean an individual, partnership, co-partnership, firm, association, joint stock company, corporation, limited liability company, or combination of the above in whatever form or character.

J. "Primary Caregiver" shall have the same definition as California Health and Safety Code Section 11362.7, and as may be amended, and which defines "Primary Caregiver" as an individual designated by a qualified patient or by a person with an identification card who has consistently assumed responsibility for the housing, health, or safety of that patient or person, and may include any of the following:

1. In any case in which a qualified patient or person with an identification card receives medical care or supportive services, or both, from a clinic licensed pursuant to Chapter 1 (commencing with Section 1200) of Division 2 of the California Health and Safety Code; a health care facility licensed pursuant to Chapter 2 (commencing with Section 1250) of

- 6 -

Division 2 of the California Health and Safety Code; a residential care facility for persons with chronic life-threatening illness licensed pursuant to Chapter 3.01 (commencing with Section 1568.01) of Division 2 of the California Health and Safety Code; a residential care facility for the elderly licensed pursuant to Chapter 3.2 (commencing with Section 1569) of Division 2 of the California Health and Safety Code; a hospice, or a home health agency licensed pursuant to Chapter 8 (commencing with Section 1725) of Division 2 of the California Health and Safety Code; the owner or operator, or no more than three employees who are designated by the owner or operator, of the clinic, facility, hospice, or home health agency, if designated as a primary caregiver by that qualified patient or person with an identification card.

2.  An individual who has been designated as a primary caregiver by more than one qualified patient or person with an identification card, if every qualified patient or person with an identification card who has designated that individual as a primary caregiver resides in the same city or county as the primary caregiver.

3.  An individual who has been designated as a primary caregiver by a qualified patient or person with an identification card who resides in a city or county other than that of the primary caregiver, if the individual has not been designated as a primary caregiver by any other qualified patient or person with an identification card.

K.  "Qualified patient" shall have the same definition as California Health and Safety Code Section 11362.7 et seq., and as may be amended, and which means a person who is entitled to the protections of California Health & Safety Code Section 11362.5. For purposes of this ordinance, qualified patient shall include a person with an identification card, as that term is defined by California Health and Safety Code Section 11362.7 et seq.

**4-7.1903 Medical Marijuana Delivery.**

A.  Medical marijuana dispensaries, exclusively located outside of the City, are permitted to deliver medical marijuana and/or medical marijuana-infused

- 7 -

products within the City of Huntington Park, only if such medical marijuana dispensaries are granted a City business license and Permit as prescribed by this Article.

B.   Those medical marijuana dispensaries with a Medical Marijuana Business Permit pursuant to Title 3, Chapter 1, Article 24, of this Code, may delivery medical marijuana and/or medical marijuana-infused product within the City.

C.   All medical marijuana deliveries not expressly permitted by this Article are hereby prohibited.

**4-7.1904 Medical Marijuana Delivery Permit Required.**

A.   It is unlawful for any business described in Section 4-7.1903(A) of this Article to deliver medical marijuana and/or medical marijuana-infused products within the City of Huntington Park unless there exists a valid Permit therefore, granted and existing in compliance with the provisions of this Article.

B.   Except as specified in Section 4-7.1903(B) of this Article, possession of other types of State, City, or other local permits or licenses does not exempt an applicant from the requirement of obtaining a Permit under this Article.

C.   All businesses described in Section 4-7.1903(A) of this Article shall be required to apply for and obtain a City business license as a prerequisite to obtaining a Permit pursuant to the terms of this Article.  Medical marijuana sales shall be subject to sales tax in a manner required by state law.

**4-7.1905 Permit Application.**

A.   On April 14, 2016, the City shall make available Permit application forms and a related administrative policy. Each business interested in operating pursuant to this Article may submit an application together with a nonrefundable processing fee in an amount established by the City Council within twenty (20) days after April 14, 2016.

- 8 -

B.   Applications for Permits shall be in writing on forms prepared and provided by the City and shall be filed with the City. Such applications shall be under oath, in duplicate, and shall contain the following information:

1.   A complete identification of the applicant.
2.   The name and residence and business address of the owner, manager, or person to be in charge.
3.   Whether or not the applicant has had a permit for the same or any similar business suspended or revoked anywhere and, if so, the circumstances of such suspension or revocation.
4.   Whether or not the applicant or any member has ever been convicted in any court for any crime.
5.   A criminal background check.
6.   Such other information deemed necessary to conduct any investigation or background check of the applicant, and for the City to determine compliance with this Article, the City's Municipal Code and Zoning Code.

C.   All applicants shall demonstrate compliance with State law, during the course of the application procedure described under this Section, prior to issuing a Permit, and upon the issuance of a Permit, thereafter.

D.   Any applicant hereunder is seeking the granting of a privilege. Therefore, the burden of proving qualifications to receive such a Permit is at all times on the applicant. By making an application for such a Permit applicant accepts all risks of adverse public notice, publicity, embarrassment, criticism, financial loss, or all other actions and consequences which may result from activities with respect to reviewing, processing, approving or disapproving any application. An applicant is expressly permitting the city to make such investigation and inquiry that the city determines appropriate and is further expressly authorizing the city to conduct such verification of criminal history and financial condition as the city elects to pursue. An application shall include an express written waiver of any claims for damages against the city or its agent resulting therefrom and waiving any claims for damages against the city

- 9 -

1  for denying an application, such waivers expressly constitutes a material
2  consideration for the city agreeing to consider and process such application.

3
**4-7.1906 Investigation.**
4
5  A.  The City Council shall cause investigations to be made to ascertain what effect,
       if any, the issuance of the Permit will have on the public peace, health, safety,
6      and general welfare of the City and its inhabitants.
7
8  B.  The Police Chief shall ascertain whether or not the applicant or other persons
9      interested in the Permit have been convicted of a felony or any crime involving
       theft, embezzlement, or moral turpitude or have had a license or permit for a
10     similar business suspended, canceled, or revoked.
11
12 C.  Reports. The Police Chief shall make a report to the City Council of his or her
13     findings, together with his or her recommendations, if any.
14
15 D.  If any of the investigating officers shall find, after the investigation as provided
       in this section, that the applicant does not comply with applicable laws or such
16     granting of a Permit would result in a violation of any law, he or she shall
17     recommend that the application be denied.
18
19
20 **4-7.1907    Review and Issuance of Permit.**

21 A.  The City Council shall review all applications and shall consider the issuance of
22     Permits at the second City Council meeting following the submittal of an
23     application. The issuance of a Permit by the City Council shall be discretionary
24     based on the following review criteria:

25     1. That the proposed delivery service is consistent with the intent of state law,
26        the provisions of this Article and the Municipal Code, including the
27        application submittal.
       2. That the proposed delivery service will not result in significant crime issues.
28     3. That all required application materials have been provided.

- 10 -

4. That issuance of the Permit would serve the needs of residents.

5. That the location is not prohibited by the provisions of this Article or any local or State law, statute, rule or regulation and no significant nuisance issues or problems are anticipated or resulted.

6. That no medical marijuana owner, licensee, agent, or employee affiliated with the applicant has violated any provision of this Article.

7. That the proposed delivery service would not adversely affect the health, peace or safety of persons living or working in the City, overly burden a specific neighborhood with special needs or high impact uses, or contribute to a public nuisance.

8. That the applicant has not violated any local or State law, statute, rule or regulation respecting the distribution, possession, or consumption of medical marijuana.

9. That the applicant has not knowingly made a false statement of material fact or has knowingly omitted to state a material fact in the application for a Permit.

10. That the applicant, his or her agent or employees, or any person who is exercising managerial authority on behalf of the applicant has not been convicted of a felony, or of a misdemeanor involving moral turpitude, or has engaged in misconduct related to the qualifications, functions or duties of a permittee. A conviction within the meaning of this section means a plea or verdict of guilty or a conviction following a plea of nolo contendere.

11. That the applicant has not engaged in unlawful, fraudulent, unfair, or deceptive business acts or practices.

12. The capacity, capitalization, and complaint history of the proposed delivery service.

B.    The City Council shall grant, conditionally grant, or deny the application.

C.    The determination of the City Council shall be final.

**4-7.1908 Permit Expiration and Renewal.**

All Permits shall automatically renew annually unless the Permit is revoked or suspended.

- 11 -

**4-7.1909 Permit Suspension and Revocation.**

A.   In the event the permittee has violated any provisions, rules or regulations of this Article or has violated or permitted the infraction of any law of the State or the City, the permittee shall be provided notice and given twenty (20) days to cure the violation.  The 20 day cure period shall not apply to any business that is required to have a Permit under this Article that is delivering medical marijuana and/or medical marijuana-infused products within the City of Huntington Park without a valid Permit.

B.   In the event the permittee fails to cure the violation within 20 days, any Permit issued pursuant to the Article shall be summarily suspended. Notice of the suspension shall be provided by posting on the premises.

C.   At its next regular meeting, the City Council shall hear the matter, giving at least twenty (20) days' notice of such hearing to the permittee. The hearing may be continued from time to time at the discretion of the City Council.

D.   Upon the conclusion of the hearing, the City Council may continue the suspension, revoke the Permit, or terminate the suspension and reinstate the Permit. If the permittee fails to attend the hearing the Permit shall be terminated.  The decision of the City Council shall be final and conclusive.

**4-7.1910 Permit Assignability.**

It shall be unlawful for any permittee to transfer, assign or attempt to assign any Permit issued pursuant to the Article without written approval from the City Council and compliance with any other City requirements and approvals.

**4-7.1911 Regulatory Fee and Seller's Permit.**

A.   In addition to the Permit application fee, the applicant shall pay an annual Regulatory Fee.  The Regulatory Fee shall be set by City Council resolution, as modified from time to time.  The Regulatory Fee shall cover staff time for monitoring, regulation, documenting breach, and nullifying Permits. The Regulatory Fee will be cost recovering.

- 12 -

B.    The State Board of Equalization has determined that medical marijuana transactions are subject to sales tax, regardless of whether the individual or group makes a profit, and those engaging in transactions involving medical marijuana must obtain a seller's permit from the State Board of Equalization.

**4-7.1912 Examination of Books, Records, Witnesses.**

A.    The City shall be provided access to any and all financial information at any time, as needed.

B.    The City is authorized to examine the books, papers, tax returns and records of any permittee for the purpose of verifying the accuracy of any information provided.

C.    The City is authorized to examine a person under oath, for the purpose of verifying the accuracy of any information provided.

D.    Every permittee is directed and required to furnish to the City the means, facilities and opportunity for making such financial examinations and investigations.

E.    Any permittee refusal to comply with this Section shall be deemed a violation of this Article.

**4-7.1913 Liability and Indemnification.**

A.    To the fullest extent permitted by law, any actions taken by a public officer or employee under the provisions of this Article shall not become a personal liability of any public officer or employee of the City.

B.    The permittees under this Article hereby agree to save, defend, indemnify and keep harmless the City and its officials, officers, employees, representatives, agents and volunteers from all actions, claims, demands, litigation, or proceedings, including those for attorneys' fees, against the City in consequence of the granting of this permit, and will in all things strictly comply with the conditions under which this permit is granted, if any.

- 13 -

**4-7.1914 Violations and Enforcement.**

A.   Cure period. In the event the permittee has violated any provisions, rules or regulations of this Article or has violated or permitted the infraction of any law of the State or the City, the permittee shall be provided notice and given twenty (20) days to cure the violation before any penalties begin to accrue. The 20 day cure period shall not apply to any business that is required to have a Permit under this Article that is delivering medical marijuana and/or medical marijuana-infused products within the City of Huntington Park without a valid Permit and penalties shall begin to accrue immediately.

B.   Violations. After the cure period, each and every violation of this Article shall constitute a separate violation and shall be subject to all remedies and enforcement measures authorized by this Code and the State of California.

C.   Penalties. Any person guilty of a misdemeanor pursuant to the provisions of this Article shall be punishable as set forth in Chapter 2 of Title 1 of this Code.

D.   Public nuisances. In addition to the penalties provided for violations, any condition caused or permitted to exist in violation of any of the provisions of this Article after the cure period shall be deemed a public nuisance and may be summarily abated as such by the City, and each day such violation continues shall be regarded as a new and separate offense.

**SECTION 4.**   Chapter 1 of Title 3 of the Huntington Park Municipal Code is hereby amended by adding a new article, Article 24 entitled "Medical Marijuana Business Permits," which reads as follows:

**Article 24 – Medical Marijuana Business Permits**

**Sections:**

**3-1.2401 Purpose and Intent.**
**3-1.2402 Definitions.**
**3-1.2403 Medical Marijuana Business Permit Required.**
**3-1.2404 Permit Application.**
**3-1.2405 Investigation.**
**3-1.2406 Review and Issuance of Permit.**
**3-1.2407 Permit Expiration and Renewal.**

- 14 -

**3-1.2408 Permit Suspension and Revocation.**
**3-1.2409 Permit Assignability.**
**3-1.2410 Regulatory Fee and Seller's Permit.**
**3-1.2411 Use of Revenue.**
**3-1.2412 Operating Requirements and Standards.**
**3-1.2413 Examination of Books, Records, Witnesses.**
**3-1.2414 Liability and Indemnification.**
**3-1.2415 Prohibited Operations.**
**3-1.2416 Violations and Enforcement.**

**3-1.2401 Purpose and Intent.**

The purpose and intent of this Article is to regulate the locations and operations of medical marijuana businesses in the City of Huntington Park in order to promote the health, safety, and general welfare of residents and businesses within the City. Medical marijuana businesses shall be limited to medical marijuana dispensaries, cultivation and manufacturing facilities, and joint dispensary and cultivation and manufacturing facilities. It is neither the intent nor the effect of this Article to condone or legitimize the use or possession of marijuana except as allowed by California law.

**3-1.2402 Definitions.**

For the purposes of this Article, unless otherwise apparent from the context, certain words and phrases used in this Article are defined as follows:

A.    "Applicant" shall mean a person who is required to file an application for a permit under this Article, including an individual owner, managing partner, officer of a corporation, or any other operator, manager, employee, or agent of a medical marijuana business.

B.    "Collective" means any association, affiliation, or establishment jointly owned and operated by its members that facilitates the collaborative efforts of qualified patients and primary caregivers.

C.    "Cultivation Area" shall mean the actual area in use for the entire cultivation process of marijuana plants (including seedling production, vegetation, and maturation), as well as reasonable walking space, such that, for example, two trays used for maturation, each measuring ten square feet and stacked vertically on top of each other shall be counted as 20 square feet of cultivation area.

D.   "Industrial Marijuana Cultivation, Processing, Manufacturing Facility" hereinafter "cultivation and manufacturing facility" shall mean any facility used for cultivating, warehousing, storing, processing and/or manufacturing more than 48 ounces of dried marijuana, and/or cultivating or storing medical marijuana in an area greater than 50 square feet of total area within one parcel of land. Any establishment engaged in, permitted to be engaged in or carrying on any medical marijuana cultivation, processing, or manufacturing or other activity mentioned in this Article shall be deemed a cultivation and manufacturing facility.

E.   Marijuana" shall have the same meaning as Health and Safety Code § 11018, as amended from time to time. Marijuana shall also include any marijuana-infused product and any product manufactured from marijuana.

F.   "Marijuana cultivation" means any activity involving the planting, growing, harvesting, drying, curing, grading, or trimming of marijuana.

G.   "Medical marijuana" means marijuana authorized in strict compliance with Health & Safety Code §§ 11362.5, 11362.7 et seq., as such sections may be amended from time to time.   Medical marijuana shall also include any marijuana-infused product and any product manufactured from marijuana.

H.   "Medical marijuana business" shall mean a medical marijuana dispensary, cultivation and manufacturing facility, or joint dispensary and cultivation and manufacturing facility.

I.   "Medical Marijuana Business Permit," hereinafter "Permit," shall mean the permit required to operate a medical marijuana dispensary, cultivation and manufacturing facility, or joint medical marijuana dispensary and cultivation and manufacturing facility within the City of Huntington Park.

J.   "Medical marijuana dispensary," or "dispensary" shall mean any association, cooperative, affiliation, or collective of persons that offers medical marijuana or medical marijuana products, either individually or in any combination, for retail sale. A dispensary shall not include dispensing by primary caregivers to qualified patients in the following locations, so long as the location of the clinic,

- 16 -

1        health care facility, hospice, or residential care facility is otherwise permitted by
2        the Municipal Code or by applicable state laws

3          1.     A clinic licensed pursuant to Chapter 1 of Division 2 of the state Health
4                and Safety Code;

5          2.     A health care facility licensed pursuant to Chapter Two of Division 2 of
6                the state Health and Safety Code;

7          3.     A residential care facility for persons with chronic life-threatening illness
                 licensed pursuant to Chapter 3.01 of Division 2 of the state Health and
8                Safety Code;

9          4.     A residential care facility for the elderly licensed pursuant to Chapter 3.2
10               of Division 2 of the state Health and Safety Code;

11          5.     A residential hospice or a home health agency licensed pursuant to
12               Chapter 8 of Division 2 of the state Health and Safety Code; provided
13               that any such clinic, health care facility, hospice or residential care
14               facility complies with applicable laws, including, but not limited to, Health
                 and Safety Code § 11362.5.
15

16 K.    "One Parcel of Land" shall mean any single piece of real property as identified
17        by the County Assessor's parcel number (APN) that is used to identify real
18        property, its boundaries, and all the rights contained therein.

19 L.     "Permittees" shall mean medical marijuana businesses that have obtained a
20        Permit under this Article.

21 M.   "Person" shall mean an individual, partnership, co-partnership, firm,
22        association, joint stock company, corporation, limited liability company, or
23        combination of the above in whatever form or character.

24 N.    "Primary Caregiver" shall have the same definition as California Health and
25        Safety Code Section 11362.7, and as may be amended, and which defines
26        "Primary Caregiver" as an individual designated by a qualified patient or by a
27        person with an identification card who has consistently assumed responsibility
28        for the housing, health, or safety of that patient or person, and may include any
         of the following:

- 17 -