health care facility, hospice, or residential care facility is otherwise permitted by the Municipal Code or by applicable state laws

1. A clinic licensed pursuant to Chapter 1 of Division 2 of the state Health and Safety Code;
2. A health care facility licensed pursuant to Chapter Two of Division 2 of the state Health and Safety Code;
3. A residential care facility for persons with chronic life-threatening illness licensed pursuant to Chapter 3.01 of Division 2 of the state Health and Safety Code;
4. A residential care facility for the elderly licensed pursuant to Chapter 3.2 of Division 2 of the state Health and Safety Code;
5. A residential hospice or a home health agency licensed pursuant to Chapter 8 of Division 2 of the state Health and Safety Code; provided that any such clinic, health care facility, hospice or residential care facility complies with applicable laws, including, but not limited to, Health and Safety Code § 11362.5.

K. "One Parcel of Land" shall mean any single piece of real property as identified by the County Assessor's parcel number (APN) that is used to identify real property, its boundaries, and all the rights contained therein.

L. "Permittees" shall mean medical marijuana businesses that have obtained a Permit under this Article.

M. "Person" shall mean an individual, partnership, co-partnership, firm, association, joint stock company, corporation, limited liability company, or combination of the above in whatever form or character.

N. "Primary Caregiver" shall have the same definition as California Health and Safety Code Section 11362.7, and as may be amended, and which defines "Primary Caregiver" as an individual designated by a qualified patient or by a person with an identification card who has consistently assumed responsibility for the housing, health, or safety of that patient or person, and may include any of the following:

1. In any case in which a qualified patient or person with an identification card receives medical care or supportive services, or both, from a clinic licensed pursuant to Chapter 1 (commencing with Section 1200) of Division 2 of the California Health and Safety Code; a health care facility licensed pursuant to Chapter 2 (commencing with Section 1250) of Division 2 of the California Health and Safety Code; a residential care facility for persons with chronic life-threatening illness licensed pursuant to Chapter 3.01 (commencing with Section 1568.01) of Division 2 of the California Health and Safety Code; a residential care facility for the elderly licensed pursuant to Chapter 3.2 (commencing with Section 1569) of Division 2 of the California Health and Safety Code; a hospice, or a home health agency licensed pursuant to Chapter 8 (commencing with Section 1725) of Division 2 of the California Health and Safety Code; the owner or operator, or no more than three employees who are designated by the owner or operator, of the clinic, facility, hospice, or home health agency, if designated as a primary caregiver by that qualified patient or person with an identification card.

2. An individual who has been designated as a primary caregiver by more than one qualified patient or person with an identification card, if every qualified patient or person with an identification card who has designated that individual as a primary caregiver resides in the same city or county as the primary caregiver.

3. An individual who has been designated as a primary caregiver by a qualified patient or person with an identification card who resides in a city or county other than that of the primary caregiver, if the individual has not been designated as a primary caregiver by any other qualified patient or person with an identification card.

O. "Qualified patient" shall have the same definition as California Health and Safety Code Section 11362.7 et seq., and as may be amended, and which means a person who is entitled to the protections of California Health & Safety Code Section 11362.5. For purposes of this ordinance, qualified patient shall

- 18 -

Exhibit One
46

include a person with an identification card, as that term is defined by California Health and Safety Code Section 11362.7 et seq.

P. "Serious medical condition" shall have the same definition as California Health and Safety Code Section 11362.7 et seq., and as may be amended, and which means all of the following medical conditions:

1. Acquired immune deficiency syndrome (AIDS);
2. Anorexia;
3. Arthritis;
4. Cachexia;
5. Cancer;
6. Chronic pain;
7. Glaucoma;
8. Migraine;
9. Persistent muscle spasms, including, but not limited to, spasms associated with multiple sclerosis;
10. Seizures, including, but not limited to, seizures associated with epilepsy;
11. Severe nausea;
12. Any other chronic or persistent medical symptom that either:
    a. Substantially limits the ability of the person to conduct one or more major life activities as defined in the Americans with Disabilities Act of 1990.
    b. If not alleviated, may cause serious harm to the patient's safety or physical or mental health.

### 3-1.2403 Medical Marijuana Business Permit Required.

A. Except for hospitals and research facilities that obtain written permission for marijuana cultivation under federal law, it is unlawful for any person to own, conduct, operate or maintain, or to participate therein, or to cause or to permit to be conducted, operated, or maintained, any medical marijuana business in the City unless there exists a valid Permit therefore, granted and existing in compliance with the provisions of this Article 24. It is unlawful to establish any outdoor cultivation and manufacturing facility within the City. It is unlawful for any entity organized on a for-profit basis, except for hospitals and research facilities, to engage in any medical marijuana business whatsoever.

B. Any use or activity that involves possessing, cultivating, processing and/or manufacturing and/or more than 50 square feet of cultivation area in the City

shall constitute industrial cultivation of medical marijuana and shall only be allowed upon the granting of a Permit as prescribed in this Article.

C. Possession of other types of State or City permits or licenses does not exempt an applicant from the requirement of obtaining a Permit under this Article.

D. An operator of a medical marijuana business shall be required to apply for and obtain a City business license as a prerequisite to obtaining a Permit pursuant to the terms of this Article. Medical marijuana business sales shall be subject to sales tax in a manner required by State law.

E. The proposed location of a medical marijuana business shall only be in Industrial/Manufacturing Planned Development ("MPD") Zones of the City of Huntington Park; provided, however, that no vested or other right shall inure to the benefit of any permittee.

**3-1.2404 Permit Application.**

A. On April 14, 2016, the City shall make available Permit application forms and a related administrative policy. Each medical marijuana business interested in operating pursuant to this Article may submit an application together with a nonrefundable processing fee in an amount established by the City Council within twenty (20) days after April 14, 2016. The City shall not accept applications or process applications after this time. Thereafter, whenever a medical marijuana business permit becomes available staff shall notify City Council, and after receiving direction from City Council, staff shall notify the public and open the application process for twenty (20) days from the public notice. The City shall not accept applications or process applications after this time.

B. Applicants are prohibited from lobbying members of the City Council regarding the approval of a Permit. Applicants are prohibited from contacting any City Council member regarding a medical marijuana business or a Permit between the date that the applications become available and the date that the City

Council acts on an application. Any attempt to contact a City Council member during this period shall disqualify the applicant from consideration for a Permit.

C. Applications for Permits shall be in writing on forms prepared and provided by the City and shall be filed with the City. Applicants are not required to have secured a final location for the medical marijuana business at the time of applying. However, final approval of a Permit is subject to having a location selected and approved by the City. Such applications shall be under oath, in duplicate, and shall contain the following information:

1. A complete identification of the applicant.
2. The name and residence and business address of the owner, manager, or person to be in charge.
3. Whether or not the applicant has had a permit for the same or any similar business suspended or revoked anywhere and, if so, the circumstances of such suspension or revocation.
4. Whether or not the applicant or any member has ever been convicted in any court for any crime.
5. A description of the type, nature and extent of the enterprise to be conducted.
6. A detailed operating plan describing how the medical marijuana business is envisioned to operate consistent with the intent of State law and the provisions of this Article, including but not limited to:

   a. Site Plan. A site plan showing the applicants plans for the medical marijuana business. If a final location has not been selected the site plan should demonstrate the applicants vision for the medical marijuana business.

   b. Floor Plan. If the Permit is for a dispensary or a joint dispensary and cultivation and manufacturing facility, the dispensary shall have a lobby waiting area at the entrance to the dispensary to receive clients, and a separate and secure designated area for dispensing medical marijuana to qualified patients or designated caregivers. The primary entrance shall be located and maintained clear of barriers, landscaping and similar obstructions so that it is clearly visible from public streets, sidewalks or site driveways.

  c. Storage. A medical marijuana business shall have suitable locked storage on premises, identified and approved as a part of the security plan, for after-hours storage of medical marijuana.

  d. Security Plans. A medical marijuana business shall provide adequate security on the premises, in accordance with a security plan approved by the Chief of Police and as reviewed by the City Council, including provisions for adequate lighting and alarms, in order to ensure the safety of persons and to protect the premises from theft. The medical marijuana business shall have twenty-four hour armed security.

  e. Security Cameras. Security surveillance cameras shall operate twenty-four hours per day and be installed to monitor the main entrance and exterior of the premises to discourage and to report loitering, crime, illegal or nuisance activities. Security video shall be maintained for a period of not less than 30 days.

  f. Alarm System. Professionally monitored robbery alarm and burglary alarm systems shall be installed and maintained in good working condition within the medical marijuana business at all times.

  g. Emergency Contact. A medical marijuana business shall provide an emergency contact with the name, cell phone number, and facsimile number of an on-site community relations staff person to whom the City may provide notice of any operating problems associated with the dispensary.

  h. Controls to verify membership to ensure medical marijuana will be dispensed only to qualified patients and primary caregivers, and

  i. Controls to acquire, possess, and distribute marijuana to and from members, and plans to ensure marijuana is acquired as part of a closed-circuit of marijuana cultivation and consumption.

7. A criminal background check.

8. Such other information deemed necessary to conduct any investigation or background check of the applicant, and for the City to determine compliance with this Article, the City's Municipal Code and Zoning Code.

D. All applicants shall demonstrate compliance with State law, during the course of the permit application procedure described under this Section, prior to issuing a Permit, and upon the issuance of a Permit, thereafter.

E. Any applicant hereunder is seeking the granting of a privilege. Therefore, the burden of proving qualifications to receive such a Permit is at all times on the applicant. By making an application for such a Permit applicant accepts all risks of adverse public notice, publicity, embarrassment, criticism, financial loss, or all other actions and consequences which may result from activities with respect to reviewing, processing, approving or disapproving any application. An applicant is expressly permitting the city to make such investigation and inquiry that the city determines appropriate and is further expressly authorizing the city to conduct such verification of criminal history and financial condition as the city elects to pursue. An application shall include an express written waiver of any claims for damages against the city or its agent resulting therefrom and waiving any claims for damages against the city for denying an application, such waivers expressly constitutes a material consideration for the city agreeing to consider and process such application.

**3-1.2405 Investigation.**

A. The City Council shall cause investigations to be made to ascertain what effect, if any, the issuance of the Permit will have on the public peace, health, safety, and general welfare of the City and its inhabitants.

B. The Police Chief shall ascertain whether or not the applicant or other persons interested in the Permit have been convicted of a felony or any crime involving theft, embezzlement, or moral turpitude or have had a license or permit for a similar business suspended, canceled, or revoked.

C. Duty of Building Official and Fire Chief. The Fire Chief and the Building Official, within the jurisdiction and duties of their particular departments, shall ascertain whether or not the premises to be used are suitable, proper, adequate, and comply with applicable laws for the issuance of the Permit.

D. Reports. The Police Chief shall make a report to the City Council of his or her findings, together with his or her recommendations, if any. The Fire Chief and Building Official shall each investigate and report to the City Council as to compliance with building and fire regulations, and floor area regulations. Such investigating officers shall include in their respective reports any information they may have regarding the character and reputation of the applicant, manager, other person to be in charge of the premises, and/or the person owning the business.

E. If any of the investigating officers shall find, after the investigation as provided in this section, that the premises do not comply with applicable laws or such use of the premises would result in a violation of any law, he or she shall recommend that the application be denied.

### 3-1.2406 Review and Issuance of Permit.

A. The City Council shall review all applications and shall consider the issuance of Permits at the first City Council meeting after close of the application submittal period. The issuance of a Permit by the City Council shall be discretionary based on the following review criteria:

1. That the proposed medical marijuana business is consistent with the intent of State law, the provisions of this Article and the Municipal Code, including the application submittal and operating requirements herein.
2. That the proposed medical marijuana business will not result in significant crime issues.
3. That all required application materials have been provided.
4. That the requested Permit would not exceed limitations on number of licenses allowed by this Article.

5. That issuance of a Permit for the size requested is justified to meet the needs of residents.

6. That issuance of the Permit would serve the needs of residents.

7. That the location is not prohibited by the provisions of this Article or any local or State law, statute, rule or regulation and no significant nuisance issues or problems are anticipated or resulted.

8. That the site plan, floor plan, and security plan have incorporated features necessary to assist in reducing potential crime-related problems and as specified in the operating requirements of this Article.

9. That no medical marijuana owner, licensee, agent, or employee affiliated with the applicant has violated any provision of this Article.

10. That all reasonable measures have been incorporated into the plan and consistently taken to successfully control the medical marijuana businesses' patrons' conduct resulting in disturbances, vandalism, uncontrolled crowds, traffic control problems, ingesting medical marijuana in public, or creation of a public or private nuisance, or interference of the operation of another business.

11. That the medical marijuana business would not adversely affect the health, peace or safety of persons living or working in the surrounding area, overly burden a specific neighborhood with special needs or high impact uses, or contribute to a public nuisance.

12. That the applicant has not violated any local or state law, statute, rule or regulation respecting the distribution, possession, or consumption of medical marijuana.

13. That the applicant has not knowingly made a false statement of material fact or has knowingly omitted to state a material fact in the application for a Permit.

14. That the applicant, his or her agent or employees, or any person who is exercising managerial authority on behalf of the applicant has not been convicted of a felony, or of a misdemeanor involving moral turpitude, or has engaged in misconduct related to the qualifications, functions or duties of a permittee. A conviction within the meaning of this section

means a plea or verdict of guilty or a conviction following a plea of nolo contendere.

15. That the applicant has not engaged in unlawful, fraudulent, unfair, or deceptive business acts or practices.

16. The capacity, capitalization, and complaint history of the proposed medical marijuana business.

B. The City Council shall grant, conditionally grant, or deny the application.

C. The City Council shall issue no more than three (3) Permits for the operation of medical marijuana businesses in the City. If legalization of recreational marijuana passes at the state level, the number of Permits shall still be limited to the three (3) Permits referred to and stated in this subsection. A permittee may choose to open and operate a dispensary, a cultivation and manufacturing facility, or expand from either a dispensary or cultivation and manufacturing facility to both a dispensary and cultivation and manufacturing facility at the same location with City Manager approval.

D. The determination of the City Council shall be final.

**3-1.2407 Permit Expiration and Renewal.**

All Permits shall automatically renew annually unless the Permit is revoked or suspended.

**3-1.2408 Permit Suspension and Revocation.**

A. In the event the permittee has violated any provisions, rules or regulations in this Article or has violated or permitted the infraction of any law of the State or the City, the permittee shall be provided notice and given twenty (20) days to cure the violation. The 20 day cure period shall not apply to medical marijuana business operating within the City of Huntington Park without a valid Permit.

B. In the event the permittee fails to cure the violation within 20 days, any Permit issued pursuant to the Article shall be summarily suspended. Notice of the suspension shall be provided by posting on the premises.

C. At its next regular meeting, the City Council shall hear the matter, giving at least twenty (20) days' notice of such hearing to the permittee. The hearing may be continued from time to time at the discretion of the City Council.

D. Upon the conclusion of the hearing, the City Council may continue the suspension, revoke the Permit, or terminate the suspension and reinstate the Permit. If the permittee fails to attend the hearing the Permit shall be terminated. The decision of the City Council shall be final and conclusive.

### 3-1.2409 Permit Assignability.

A. It shall be unlawful for any permittee to transfer, assign or attempt to assign any Permit issued pursuant to the Article without written approval from the City Council and compliance with any other City requirements and approvals.

B. It shall be unlawful for any permittee to move to a new location within the permitted zone without written approval from the City Manager and compliance with any other City requirements and approvals.

### 3-1.2410 Regulatory Fee and Seller's Permit.

A. In addition to the Permit application fee, the medical marijuana business shall pay an annual Regulatory Fee. The Regulatory Fee shall be set by City Council resolution, as modified from time to time. The Regulatory Fee shall cover staff time for monitoring, regulation, documenting breach, and nullifying Permits. The Regulatory Fee will be cost recovering.

B. The State Board of Equalization has determined that medical marijuana transactions are subject to sales tax, regardless of whether the individual or group makes a profit, and those engaging in transactions involving medical marijuana must obtain a seller's permit from the State Board of Equalization.

### 3-1.2411 Use of Revenue.

A. Fifteen percent (15%) of revenues collected by the City from the medical marijuana business shall be set aside and used by the City to fund an

Educational, Youth and/or Senior Programs Fund for the City Council to use at its discretion. City Council approval shall be required prior to use of such funds. The Educational and/or Youth Programs Fund shall be established prior to the first City Council meeting after close the application submittal period.

B. Fifteen percent (15%) of revenue collected by the City from the medical marijuana business shall be set aside and used by the City to fund a Residents Water Rate Fund account for the City Council's discretionary use to lower and/or prevent water rate increase. City Council approval shall be required prior to use of such funds. The Residents Water Rate Fund account shall be established prior to the first City Council meeting after close the application submittal period.

**3-1.2412 Operating Requirements and Standards.**

The medical marijuana business shall comply with operating requirements and standards. Noncompliance of such operating requirements and standards shall constitute a breach of the Permit issued hereunder and may render such Permit suspended or revoked. In addition to any other operating requirements and standards established by the City Council, permittees must comply with the following operating requirements and standards:

A. Operating Agreement. All Permittees under this Article shall enter into an operating agreement with the City and shall comply with all terms within such negotiated and agreed upon operating agreement.

B. Location. The final location of a medical marijuana business is subject to compliance with the City Municipal Code and must be approved by the City. The location of the medical marijuana business shall not be within 600 feet of a public or private school, park, or religious structure.

C. Hours of Operation. A medical marijuana business may only operate between the hours of 9:00 am to 8 pm, Monday through Sunday.

D. Cash Management System. Cash handling and all cash transactions by employees are prohibited at any medical marijuana business. All medical

marijuana transactions shall operate through a cash management system that includes and has a point of sale and seed to sale system, all integrated into one cash management operating system. All transactions must be completed through this system.

E. Use of Marijuana. No marijuana shall be smoked, ingested or otherwise consumed on the premises of the medical marijuana business.

F. Minors. It is unlawful for any medical marijuana business permittee, operator, or other person in charge of any medical marijuana business to employ any person who is not at least 18 years of age. Persons under the age of 18 shall not be allowed on the premises of a medical marijuana business. The entrance to a medical marijuana business shall be clearly and legibly posted with a notice indicating that persons under the age of 18 are precluded from entering the premises.

G. Alcohol. The medical marijuana business shall not hold or maintain a license from the State Department of Alcohol Beverage Control to sell alcoholic beverages, or operate a business that sells alcoholic beverages.

H. Operating Plan. A medical marijuana business must operate in accordance with the operating plan, as detailed in Section 3-1.2404, submitted as part of the permittees' Permit application.

I. Exterior Signage. All exterior signage must comply with the City's existing sign ordinance.

J. Loitering. Loitering shall not be permitted in front of or at the medical marijuana business.

K. If the medical marijuana business is a medical marijuana dispensary or a joint medical marijuana dispensary and cultivation and manufacturing facility, the following operating standards shall apply to the dispensary:

   1. Dispensing. A dispensary shall only dispense to qualified patients or primary caregivers with a currently valid physician's approval or

recommendation in compliance with the criteria in California Health and Safety Code Section 11362.5 et seq or a state or county issued Medical Marijuana Identification Card. Dispensaries shall require such persons to provide valid official identification, such as a Department of Motor Vehicles driver's license or State Identification Card. Prior to dispensing medical cannabis, the dispensary shall obtain a verification from the recommending physician's office personnel that the individual requesting medical cannabis is or remains a qualified patient pursuant to state Health & Safety Code Section 11362.5.

    2. Access. The entrance area of the dispensary building shall be strictly controlled. A viewer or video camera shall be installed in the door that allows maximum angle of view of the exterior entrance.

L. If the medical marijuana business is a cultivation and manufacturing facility or a joint medical marijuana dispensary and cultivation and manufacturing facility, the following operating standards shall apply to the cultivation and manufacturing facility:

    1. Indoor cultivation. A cultivation and manufacturing facility may only cultivate marijuana indoors, no outdoor cultivation shall be permitted.

    2. Access. The entrance area of the cultivation and manufacturing facility shall be strictly controlled. A viewer or video camera shall be installed in the door that allows maximum angle of view of the exterior entrance.

**3-1.2413 Examination of Books, Records, Witnesses.**

A. The City shall be provided access to any and all financial information at any time, as needed.

B. The City is authorized to examine the books, papers, tax returns and records of any permittee for the purpose of verifying the accuracy of any information provided.

C. The Police Department is authorized to review the security video maintained by the medical marijuana business.

- 30 -

D. The City is authorized to examine a person under oath, for the purpose of verifying the accuracy of any information provide.

E. Every permittee is directed and required to furnish to the City the means, facilities and opportunity for making such financial examinations and investigations.

F. Any permittee refusal to comply with this Section shall be deemed a violation of this Article.

### 3-1.2414 Liability and Indemnification.

A. To the fullest extent permitted by law, any actions taken by a public officer or employee under the provisions of this Article shall not become a personal liability of any public officer or employee of the City.

B. The permittees under this Article hereby agree to save, defend, indemnify and keep harmless the City and its officials, officers, employees, representatives, agents and volunteers from all actions, claims, demands, litigation, or proceedings, including those for attorneys' fees, against the City in consequence of the granting of this permit, and will in all things strictly comply with the conditions under which this permit is granted, if any.

### 3-1.2415 Prohibited Operations.

A. All medical marijuana businesses that do not have a Permit under this Article are expressly prohibited. All medical marijuana businesses in violation of California Health and Safety Code Section 11326.7 et seq. and 11362.5 and this Article are expressly prohibited. It is unlawful for any medical marijuana business in the City, or any agent, employee or representative of such business, to permit any breach of peace therein or any disturbance of public order or decorum by any tumultuous, riotous or disorderly conduct on the premises of the dispensary.

B. No use which purports to have delivered, cultivated or distributed marijuana prior to the enactment of this chapter shall be deemed to have been a legally

...

established use under the provisions of the Huntington Park Zoning Code, this Article, or any other local ordinance, rule or regulation, and such use shall not be entitled to claim legal nonconforming status.

**3-1.2416 Violations and Enforcement.**

A.  Cure period. In the event the permittee has violated any provisions, rules or regulations of this Article or has violated or permitted the infraction of any law of the State or the City, the permittee shall be provided notice and given twenty (20) days to cure the violation before any penalties begin to accrue. The 20 day cure period shall not apply to any medical marijuana business operating within the City of Huntington Park without a valid Permit.

B.  Violations. After the cure period, each and every violation of this Article shall constitute a separate violation and shall be subject to all remedies and enforcement measures authorized by this Code and the State of California.

B.  Penalties. Any person guilty of a misdemeanor pursuant to the provisions of this Article shall be punishable as set forth in Chapter 2 of Title 1 of this Code.

C.  Public nuisances. In addition to the penalties provided for violations, any condition caused or permitted to exist in violation of any of the provisions of this Article after the cure period shall be deemed a public nuisance and may be summarily abated as such by the City, and each day such violation continues shall be regarded as a new and separate offense.

**SECTION 5.** The City Council finds and determines that the adoption of this Ordinance is exempt from CEQA under Sections 15061(b)(3) (common sense exemption) of the State CEQA Guidelines.

**SECTION 6.** If any section, subsection, subdivision, sentence, clause, phrase or portion of this Ordinance, is for any reason held to be invalid or unconstitutional by the decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this Ordinance. The City Council hereby declares that it would have adopted this Ordinance and each section, subsection, subdivision,

sentence, clause, phrase, or portion thereof, irrespective of the fact that any one or more sections, subsections, subdivisions, sentences, clauses, phrases, or portions thereof be declared invalid or unconstitutional.

**SECTION 7.** Any amendment to any section, subsection, subdivision, sentence, clause, phrase or portion of Article 19 of Title 4, Chapter 7 of the Huntington Park Municipal Code or Article 24 of Title 3, Chapter 1 of the Huntington Park Municipal Code requires a four-fifths (4/5) vote of the Huntington Park City Council.

**SECTION 8.** The City Clerk shall certify to the adoption of this Ordinance and cause the same to be published in the manner prescribed by law.

**PASSED, APPROVED, AND ADOPTED** this 15th day of March 2016.

_____
Graciela Ortiz, Mayor

ATTEST:

_____
Donna G. Schwartz, CMC
City Clerk

## CERTIFICATION

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES ) SS
CITY OF HUNTINGTON PARK)

I, Donna Schwartz, City Clerk of the City of Huntington Park, California, do hereby certify that the foregoing Ordinance No. 2016-946, was introduced on March 1, 2016 and adopted and dully passed by the City Council of the City of Huntington Park at a regular meeting of the City Council held on the 15th day of March, 2016 by the following vote, to wit:

AYES: Council Members – Macias, Vice Mayor Sanabria and Mayor Ortiz

NOES: Council Members – Amezquita

ABSENT: Council Members – Pineda

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Seal of the City of Huntington Park, this 21st day of March, 2016

Donna G. Schwartz, CMC, City Clerk