UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority　　　
Send　　　
Enter　　　
Closed　　　
JS-5/JS-6　　　
Scan Only　　　

| | | |
|---|---|---|
| **CASE NO.:** | CV 17-01467 SJO (AFMx) | **DATE:** June 15, 2018 |
| **TITLE:** | MKay, Inc. et al. v. City of Huntington Park et al. | |

============================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Victor Paul Cruz | Not Present |
| Courtroom Clerk | Court Reporter |

**COUNSEL PRESENT FOR PLAINTIFFS:**　　　**COUNSEL PRESENT FOR DEFENDANTS:**

Not Present　　　　　　　　　　　　　　　　　Not Present

============================================================================
**PROCEEDINGS (in chambers): ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** [Docket No. 113]**; GRANTING IN PART AND DENYING IN PART CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** [Docket No. 126]

These matters are before the Court on: (1) Plaintiffs MKay, Inc., Gage Collective, Inc., Flower Refinery, Inc., Go Green Medical Holdings, Inc., Cruz Verde, Inc., CBD, Inc., Trink Health, Inc., and Five Point Ventures, Inc. (collectively, "Plaintiffs") Motion for Summary Judgment ("MKay Motion"), filed March 7, 2018; and (2) Defendants City of Huntington Park ("City"), Graciela Ortiz, Marilyn Sanabria, and Karina Macias' (collectively, "City Defendants") Motion for Summary Judgment ("City Motion"), filed March 12, 2018. City Defendants opposed the MKay Motion ("MKay Opposition") on March 19, 2018, and Plaintiffs opposed the City Motion ("City Opposition") on April 16, 2018. Plaintiffs replied to the MKay Opposition ("MKay Reply") on March 26, 2018, and City Defendants replied to the City Opposition ("City Reply") on April 20, 2018.[1] The Court

---

[1] The Court notes that the parties have violated a number of the Court's rules within their various filings. For example, City Defendants far exceed the Court's page limits in the City Motion and City Reply. (*See* Initial Standing Order ¶ 24, ECF No. 6.) Neither party submitted their statements of undisputed facts or genuine disputes of fact in a tabbed binder, despite being reminded that strict adherence to the Initial Standing Order is required for these particular filings. (*See* Initial Standing Order ¶ 27; 3/30/2018 Minute Order at 2, ECF No. 160.) City Defendants further failed to comply with the Court order that "[g]iven the voluminous number of citations . . . each citation to the record [must] include a quotation or description of the contents of that citations." (3/30/2018 Minute Order at 2.) And, despite warning that the "Court will not entertain any filings, absent a showing of good cause, that are not timely filed or expressly permitted by this Order," Plaintiffs filed an amended separate statement of disputed facts three days after the Court's deadline. (3/30/2018 Minute Order at 2; Amended Separate Statement of Disputed Facts ("ASSDF"), ECF No. 176.) While the Court has considered all filings relevant to its disposition, the parties are advised that any further failure to comply with Court rules may result in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

CASE NO.: <u>CV 17-01467 SJO (AFMx)</u>          DATE: <u>June 15, 2018</u>

found this matter suitable for disposition without oral argument and vacated the hearing set for May 7, 2018.  *See* Fed. R. Civ. P. 78(b).  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the MKay Motion and **GRANTS IN PART** and **DENIES IN PART** the City Motion.

I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

On January 11, 2017, Plaintiffs filed a Complaint in Los Angeles Superior Court asserting causes of action for (1) civil conspiracy; (2) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (3) violation of the First Amendment to the United States Constitution pursuant to 42 U.S.C. section 1983 ("Section 1983"); and (4) violation of Article I, Section 2 of the California Constitution.  (*See* Notice of Removal, Ex 1 ("Compl."),  ECF No. 1-2.)  The first two causes of action were asserted against City Defendants as well as Defendants MJIC, Inc. ("MJIC"), C4Eversystems, Inc. ("C4Ever"), Goodness 4 Life, Inc. ("G4L"), Natural Compassionate Center ("NCC"), Vibha C. Patel, Michael A. Schenone, and United Health & Care Center's ("UHCC") (collectively, "Dispensary Defendants"); the third and fourth causes of action were asserted only against City Defendants.  (*See generally* Compl.)  City Defendants removed the action to this Court on February 22, 2017.  (*See* Notice of Removal, ECF No. 1.)  On May 22, 2017, Plaintiffs filed a First Amended Complaint ("FAC") omitting the RICO claim, withdrawing the claim for civil conspiracy as to the City Defendants, adding a "fraud" claim against the City Defendants, adding a Section 1983 claim based on violation of the Fifth and Fourteenth Amendments, and adding Mike Patel as one of the Dispensary Defendants.[2]  (*See* FAC, ECF No. 40.)  The Dispensary Defendants were dismissed from the action on April 27, 2018.  (*See* Joint Stip. to Dismiss, ECF No 179. )  The parties stipulated to dismiss Plaintiffs' claim for fraud on May 2, 2018.  (Stip. Dismissing Pl's Second Cause of Action, ECF No. 185.)

At the heart of the dispute is the constitutionality of various ordinances and administrative policies (the "Ordinances") setting forth the selection process for Medical Marijuana Business Permits ("MMBPs") required to operate a medical marijuana business ("MMB") within the City.  (*See generally* MKay Mot., ECF No. 113; City Mot., ECF No. 151.)  The relevant text of the Ordinances reads as follows:

> Applicants are **prohibited from lobbying** members of the City Council **regarding the approval of a Permit**. Applicants are **prohibited from contacting any City Council member** regarding a medical marijuana business or a Permit **between the**

---

sanctions.

[2]  The Court previously dismissed Plaintiffs' fourth cause of action to the extent it asserts a violation of the Fifth Amendment, holding that only the Fourteenth Amendment applies to Plaintiffs' claims.  (Order re City Def's Mot. to Dismiss 15, ECF No. 53.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** CV 17-01467 SJO (AFMx)        **DATE:** June 15, 2018

**date that the applications become available** and **the date that the City Council acts on an application**. Any attempt to contact a City Council member during this period shall disqualify the applicant from consideration for a Permit.

(Decl. David Welch in Supp. MKay Mot. ("Welch Decl.") Ex. 1 ("Ordinance 2016-946") at 26-27 [emphasis added], ECF No. 122.)

Applicants are prohibited from lobbying any Huntington Park City Council Member or any employee of the City of Huntington Park regarding a medical marijuana business or a Permit application between the date that the applications become available and the date that the City Council acts on an application. Any attempt to lobby a City Council member or any employee of the City of Huntington Park during this period shall disqualify the applicant from consideration for a Permit.

(Welch Decl. Ex. 2 ("Administrative Policy") at 46, ECF No. 123.) Both parties move for summary judgment on the issues of: (1) whether the Ordinances are invalid under the Fourteenth Amendment; (2) whether the Ordinances are invalid under the First Amendment; and (3) whether the Ordinances are invalid under the California Constitution. (*See generally* MKay Mot.; City Mot.)

II.     <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56(a) mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party does not need to produce any evidence or prove the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 325. Rather, the moving party's initial burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* "Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (quoting *Celotex*, 477 U.S. at 322).

Once the moving party meets its initial burden, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion." Fed. R. Civ. P. 56(c)(1). "The mere existence

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority  ____
Send  ____
Enter  ____
Closed  ____
JS-5/JS-6  ____
Scan Only  ____

**CASE NO.:** CV 17-01467 SJO (AFMx)        **DATE:** June 15, 2018

of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("[O]pponent must do more than simply show that there is some metaphysical doubt as to the material facts."). Further, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment [and f]actual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby*, 477 U.S. at 248. At the summary judgment stage, a court does not make credibility determinations or weigh conflicting evidence. *See id.* at 249. A court is required to draw all inferences in a light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

III.     DISCUSSION

Plaintiffs seek summary judgment on their claim that the City's prohibition on lobbying during the application period violated their rights under the First and Fourteenth Amendment to the United States Constitution and Article I of the California Constitution. (*See generally* MKay Mot.; City Opp'n, ECF No. 174.) City Defendants likewise move for summary judgment that the limited prohibition on lobbying does not violate either the U.S. Constitution or the California Constitution, that these provisions are severable from the rest of the Ordinances, and that they are entitled to qualified immunity on Plaintiffs' claims. (*See generally* City Mot.; MKay Opp'n, ECF No. 151.) The Court analyzes the parties' arguments below.

     A.     The Ordinances Violate the First Amendment and California Constitution

         1.     Legal Standards

            a.     The First Amendment to the U.S. Constitution

The First Amendment to the U.S. Constitution states, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend I. The Fourteenth Amendment extends these prohibitions against the States. *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 778 (1978). "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002) (internal quotation marks omitted). The United States Supreme Court has held that lobbying, a method of petitioning the government, is a form of speech undeniably protected by the First Amendment. *See, e.g., Roberts v. U.S. Jaycees*, 468 U.S. 609, 626-27 (1984) ("[M]embers of the Jaycees regularly engage in a variety of civic, charitable, lobbying, fundraising, and other activities worthy of constitutional protection under the First Amendment"); *F.T.C. v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 426 (1990) ("It is, of course, clear that the association's efforts ... to lobby

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority  _____
Send      _____
Enter     _____
Closed    _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** CV 17-01467 SJO (AFMx)          **DATE:** June 15, 2018

District officials to enact favorable legislation . . . were activities that were fully protected by the First Amendment."). Moreover, "[l]aws that burden political speech are subject to strict scrutiny, which requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (citations and quotations omitted).

Outside the realm of political speech, the government may still not "restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015) (citing *Police Dept. Of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* The first step in determining whether an ordinance is content-based is "to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* at 2227 (quoting *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 566 (2011)). "Regulations draw such a distinction if they target speech based on its communicative content, prohibit public discussion of an entire topic, or single out specific subject matter for differential treatment." *In re Nat'l Sec. Letter*, 863 F.3d 1110, 1122 (9th Cir. 2017) (citing *Reed*, 135 S. Ct at 2226-30). The government may, however, "impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

    b. <u>The California Constitution</u>

The California liberty of speech provides that "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right." Cal. Const. art. I, § 2. Furthermore, the "people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good." Cal. Const. art. I, § 3. Because it grants an affirmative right to speak, the language of California's liberty of speech clause "is broader and more protective than the free speech clause of the First Amendment." *Los Angeles All. For Survival v. City of Los Angeles*, 22 Cal. 4th 352, 366 (2000). Like the First Amendment, however, a law regulating speech "will be upheld as a reasonable time, place, and manner regulation so long as it is (I) narrowly tailored, (ii) serves a significant government interest, and (iii) leaves open ample alternative avenues of communication." *Id.* at 364.

\\

   2. <u>Analysis</u>

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

| | |
|---|---|
| CASE NO.: <u>CV 17-01467 SJO (AFMx)</u> | DATE: <u>June 15, 2018</u> |

      a.      <u>The Ordinances are Subject to Strict Scrutiny</u>

The question the Court faces at the outset is the level of scrutiny applicable to Plaintiffs' First Amendment challenge. Under First Amendment jurisprudence, laws that "burden political speech" and "content-based laws" are subject to strict scrutiny. *Citizens United*, 558 U.S. at 340; *Reed*, 135 S. Ct. at 2226. Laws burdening speech that are content-neutral, however, are subject to intermediate scrutiny. *Ward*, 491 U.S. at 791.

Plaintiffs argue that lobbying, or "the right to petition for a redress of grievances," is one of the core types of political speech protected by the First Amendment. (MKay Mot. 10-11.) Indeed, as Plaintiffs point out, "[s]peech advocating a campaign to affect government policy is the essence of protected, political speech." (MKay Mot. 11 [citing *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 185 (6th Cir. 2008)].) If the lobbying prohibited by the Ordinances was in fact "speech advocating a campaign to affect government policy," it is undoubted that this prohibition would be subject to strict scrutiny.

The Ordinances, however, prohibit "lobbying members of the City Council regarding the approval of a [MMBP] . . . between the date . . . applications become available and the date . . . the City acts on an application." (Ordinance 2016-946 at 20.) While perhaps inartfully drafted, the term "lobbying" here refers to attempts to influence an administrative process, not a legislative one. The significance of the difference in these two kinds of activity is aptly explained in one of the Court's previous orders. (*See* Order Denying Def's Mot. to Strike ("Order"), ECF No. 107.) Applying the *Noerr-Pennington* Doctrine, used in the Ninth Circuit as a general First Amendment defense against statutorily proscribed petitioning activity, the Court held that the First Amendment did not immunize the Defendant from Plaintiff's claim for civil conspiracy. (Order 7-8.) The Court explained:

> The Supreme Court has made it clear that *Noerr-Pennington* immunizes any legislative petitioning activity promoting the passage of a valid law, regardless of whether the petitioning activity "employed deception and misrepresentation and unethical tactics." *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 512 (1972). Outside of the legislative arena, however, unethical conduct is not so widely condoned. *Id.* at 513 ("Misrepresentations, condoned in the political arena, are not immunized when used in the adjudicatory process."). For this reason, "[c]onspiracy with a licensing authority to eliminate a competitor" is not immunized under *Noerr-Pennington*. *Id.* (citing *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 707 (1962); *Harman v. Valley Nat. Bank of Ariz.*, 339 F.2d 564, 566 (9th Cir. 1964)).
>
> If Plaintiffs' claims addressed only Defendant's efforts to effectuate passage of the Ordinances, this would clearly fall under *Noerr-Pennington* immunity. Plaintiffs,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority  ____
Send      ____
Enter     ____
Closed    ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.:  **CV 17-01467 SJO (AFMx)**          DATE: **June 15, 2018**

> however, do not challenge the Ordinances themselves, but rather a conspiracy between the City Council and Defendant to exclude certain competitors from obtaining the MMBPs in violation of the Ordinances. Obtaining an MMBP is not a legislative process, but an administrative one, and abuse of an administrative process is not immunized under *Noerr-Pennington. Id.* at 513 ("Insofar as the administrative or judicial processes are involved, actions of that kind cannot acquire immunity by seeking refuge under the umbrella of 'political expression.'"). In short, Plaintiffs' civil conspiracy claim is not directed to Defendants' petitioning conduct, but to Defendant's abuse of the licensing system the Ordinances created, and Defendant is therefore ineligible for *Noer-Pennington* immunity.

(Order 7-8.)

The difference in application of *Noerr-Pennington* immunity between petitioning conduct attempting to influence a legislative outcome and petitioning conduct attempting to influence an administrative or judicial outcome suggests that the former is what is contemplated as "the essence of protected, political speech" that is subject to strict scrutiny under our current jurisprudence. This finding is supported by the language of *California Motor,* which contrasts Congress' traditional exercise of "extreme caution in legislating with respect to problems relating to the conduct of political activities" with the stricter regulations imposed in administrative or adjudicatory forums. *California Motor,* 404 U.S. at 512. In *Citizens United*, the Supreme Court justified the application of strict scrutiny to "laws that burden political speech" with its finding that the First Amendment "has its fullest and most urgent application to speech uttered during a campaign for political office." *Citizens United*, 558 U.S. at 340 (citations and quotations omitted). Unlike the electoral process described in *Citizens United*, and the legislative process generally, administrative and judicial agencies operate independent of the political realm and have long regulated the form and manner of speech permitted by parties who proceed in these forums. While the right of petition certainly protects "the right of access to the agencies and courts," *California Motor,* 404 U.S. at 513, it cannot be said that this type of speech is the "political speech" that the Supreme Court has contemplated to be subject to the highest standards of scrutiny.

Plaintiffs argue that the Ordinances are nevertheless subject to strict scrutiny because they are "content-based" in that they prohibit "lobbying regarding MMBs and MMB permits, while not prohibiting lobbying that is not regarding MMBs and MMB permits." (MKay Mot. 12.) While the prohibition on lobbying only applies within the narrow time frame of the application period, and an outright ban on lobbying would certainly fare no better under the First Amendment, the Court agrees that the Ordinances as written are content-based. The Supreme Court has made it clear that laws that regulate speech "by particular subject matter or by its function or purpose" are subject to strict scrutiny. *Reed*, 135 S. Ct. at 2222. A benign purpose or "innocuous justification

Case 2:17-cv-01467-SJO-AFM Document 188 Filed 06/15/18 Page 8 of 11 Page ID #:5513

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:  CV 17-01467 SJO (AFMx)        DATE: June 15, 2018

cannot transform a facially content-based law into one that is content-neutral."[3]  *Id.* at 2228.  If the "scope of the prohibited conduct" is defined with reference to its content, then the law or regulation is in fact "content-based."  *United States v. Eichman*, 496 U.S. 310, 315 (1990).  Here, applicants are prohibited from "lobbying members of the City Council regarding the approval of a permit" and "contacting any City Council member regarding a medical marijuana business or a permit." (Ordinance 2016-946 at 20.)  The prohibition on speech specifically references the content of the speech, and is thus content-based.

    b*.*  <u>The Ordinances do not Survive Strict Scrutiny</u>

Having determined that the prohibition on lobbying is content-based, the Court must apply the Supreme Court's strict scrutiny test for content-based restrictions on speech and ask whether the Ordinances are narrowly tailored to serve a compelling state interest.  *Reed*, 135 S. Ct. at 2226.  Plaintiffs first argue that the Ordinances are not narrowly tailored because "Plaintiffs were barred from speaking to the City Council, or any employee of the City, about MMBs generally" after the application period began, and thus those considering submitting an application could be barred from submitting one simply by contacting the City to request information on the process.  (MKay Mot. 13.)  Plaintiffs' claim is based primarily on the part of the Ordinances that states that "[a]pplicants are prohibited from contacting any City Council member regarding a medical marijuana business or a permit" during the application period on penalty of disqualification. (Ordinance 2016-946 at 20.)  While the Court notes that the Ordinances specifically refer to "applicants," and thus would presumably not apply to those who had not yet submitted an application, the Court agrees that the prohibition is unnecessarily broad in that it prohibits even benign inquiries on the status of an application or grievances regarding aspects of the application process.

City Defendants argue that the Ordinances are narrowly tailored to serve the interest of "preventing corruption and the appearance of corruption." (City Mot. 27-28.)  While the prevention of corruption is certainly a compelling government interest, *see Buckley v. Valleo*, 424 U.S. 1, 27 (1976), it is unclear that this purpose is served by such a broad prohibition on "contacting any employee of the City of Huntington Park" during the application period.  (Administrative Policy at 46.)  City Defendants could have instead enacted prohibitions on bribery, coercion, undue influence, fraud, or other practices that target corrupt practices specifically rather than speech or

---

[3] In arguing that the Ordinances are content neutral, City Defendants emphasize the statement in *Ward* that "the principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys."  *Ward*, 491 U.S. 781.  In *Reed,* however, the Supreme Court clarified that *Ward* only applies to a law that is not "content based on its face[.]"  *Reed*, 135 S. Ct. at 2222.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** CV 17-01467 SJO (AFMx)   **DATE:** June 15, 2018

conduct relating to MMBs entirely. City Defendants could also have provided a particular method or form for questions or inquiries that would insulate it from the appearance of corruption, such as by requiring all communications to be in writing or via official channels. The Court agrees that City Defendants' ban on all communications from applicants instead "prohibited applicants from having their legitimate concerns over the process addressed" and is thus impermissible under a strict scrutiny analysis. (City Opp'n 21.)

  B. <u>The Ordinances are Unconstitutionally Vague under the Fourteenth Amendment</u>

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). This principle serves to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly" and prevent "arbitrary and discriminatory enforcement" of laws. *Id.* Imprecise laws can be challenged under two different doctrines: (1) the "overbreadth doctrine, which permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep"; and (2) the vagueness doctrine, which provides that "even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standard for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests." *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999).

Plaintiffs argue that the Ordinances are unconstitutionally overbroad or vague as they fail to define "lobbying," "contacting," or "attempting to contact" a council member or city employee, or the scope of the definition of "regarding a medical marijuana business." (City Opp'n 13.) Plaintiffs point out that it is unclear whether the statute prohibits requesting information about the status of an application, discussing the fairness and transparency of the review process, discussing issues related to marijuana businesses that do not directly address the permitting process, and many other types of inquiries. (City Opp'n 13-14.) The Court agrees that the Ordinances as written are not appropriately narrow in scope and do not well define the kinds of activities that are prohibited, and thus are unconstitutionally vague.

  C. <u>The Offending Provisions of the Ordinances can be Severed</u>

The principle of separation of powers dictates that courts "must respect the laws made by legislatures and, therefore, should avoid nullifying an entire statute when only a portion is invalid." *Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 573-74 (9th Cir. 2014). The judicial doctrine of severability represents "the elementary principle that the same statute may be in part constitutional and in part unconstitutional, and that if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected." *Id.* at 574. "The need for deference and restraint in severing a state or local enactment is all the more acute

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: <u>CV 17-01467 SJO (AFMx)</u>    DATE: <u>June 15, 2018</u>

because of our respect for federalism and local control." *Id.* Thus, "the severability of a local ordinance is a question of state law." *Id.*

Under California law, courts are directed to first consider "the inclusion of a severability clause in the legislation," which raises a "presumption in favor of severance." *Id.* (citing *Cal. Redev. Ass'n v. Matosantos*, 53 Cal.4th 231 (2011)). Courts are then directed to "consider three additional criteria: [t]he invalid provision must be grammatically, functionally, and volitionally separable." "Grammatical separability, also known as mechanical separability, depends on whether the invalid parts can be removed as a whole without affecting the wording or coherence of what remains." *Id.* "Functional severability depends on whether the remainder of the statute is complete in itself." *Id.* at 576. Finally, "volitional severability depends on whether the remainder of the statute is complete in itself and would have been adopted by the legislative body had it foreseen the partial invalidation of the statute." *Id.*

As the Ordinances contain a severability clause, there is a presumption in favor of severance. (*See* Ordinance 2016-946 at 38-39 ["If any section . . . of this Ordinance, is for any reason held to be invalid or unconstitutional by the decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this Ordinance. The City Council hereby declares that it would have adopted this Ordinance . . . irrespective of the fact that any one or more sections . . . be declared invalid or unconstitutional"].) The anti-lobbying provisions are two very small sections of lengthy ordinances with an overall purpose of establishing the requirements and procedures for operating a marijuana business within the City, and can easily be severed from the Ordinances without affecting the content or context of the rest. These provisions are thus both grammatically and functionally severable from the remainder of the Ordinances' provisions. And, despite Plaintiffs' argument to the contrary, City Defendants' stated purpose of "avoiding the appearance of corruption" in enacting the anti-lobbying provisions does not mean that these provisions are not volitionally severable; both the text of the severability clause and the purpose of these provisions within the greater context of the application scheme suggest that the City intended them to be entirely divisible from the Ordinances' other requirements. As there is nothing on the record that would overcome the presumption of severability in this instance, the Court holds that the anti-lobbying provisions identified by Plaintiffs are severable from the remainder of the Ordinances.

    D.    <u>The Claims against Defendants Graciela Ortiz, Marilyn Sanabria, and Karina Macias are Dismissed as Duplicative</u>

City Defendants finally argue that Graciela Ortiz, Marilyn Sanabria, and Karina Macias have qualified immunity from Plaintiffs' claims. Qualified immunity operates to shield "government officials performing discretionary functions" from personal liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: <u>CV 17-01467 SJO (AFMx)</u>  DATE: <u>June 15, 2018</u>

respond that qualified immunity is not applicable because these parties are being sued in their "official capacity," and not their individual capacity. (City Opp'n 28.) "Where plaintiffs sue both a local government entity and agents of that entity in their official capcities," however, "courts may dismiss the official capacity claims as duplicative." *Rosas v. Baca*, No. CV 12-00428 DDP SHX, 2012 WL 933609, at *2 (C.D. Cal. Mar. 20, 2012). Because Plaintiffs have conceded that these defendants are being sued in their official capacities only, the Court **DISMISSES** Graciela Ortiz, Marilyn Sanabria, and Karina Macias from the action.

III. <u>RULING</u>

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs MKay, Inc., Gage Collective, Inc., Flower Refinery, Inc., Go Green Medical Holdings, Inc., Cruz Verde, Inc., CBD, Inc., Trink Health, Inc., and Five Point Ventures, Inc.'s Motion for Summary Judgment; and **GRANTS IN PART** and **DENIES IN PART** Defendants City of Huntington Park, Graciela Ortiz, Marilyn Sanabria, and Karina Macias' Motion for Summary Judgment. The parties are **ORDERED** to submit a joint brief of not more than ten (10) pages outlining the parties' respective positions on the impact of this Order on any remaining issues in the case within fourteen (14) days of the date of this Order.

IT IS SO ORDERED.